Filed 5/15/13  Certified for publication 6/11/13 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CITY OF SAN DIEGO et al., | D061715 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. MCR 12-006) |
| ESTHER BOGGESS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Frederick Maguire, Judge.  Affirmed.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Jan I. Goldsmith, City Attorney, Mary Jo Lanzafame, Assistant City Attorney, Paige E. Folkman, Deputy City Attorney for Plaintiffs and Respondents.

Appellant Esther Boggess appeals an order for the seizure and destruction of her firearms following a petition filed under Welfare and Institutions Code[1] section 8102 after her release from a facility at which she was detained for psychiatric evaluation under section 5150. The court granted the petition, finding petitioners City of San Diego, Chief of Police William Lansdowne, and the San Diego Police Department (collectively City) demonstrated return of the firearms to Boggess would be likely to result in endangering Boggess or others, and they should not be returned to her, but forfeited and destroyed.

Boggess contends there was insufficient evidence to support the court's determination that return of the firearms would be likely to pose a risk of harm to herself or others. She also contends section 8102 is unconstitutional in light of two United States Supreme Court cases, *District of Columbia v. Heller* (2008) 554 U.S. 570 (*Heller*) and *McDonald v. City of Chicago* (2010) 561 U.S. ___ [130 S.Ct. 3020] (*McDonald*), as the statute infringes on her fundamental Second and Fourteenth Amendment right to bear arms. We reject these contentions and affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

*Police Response*[2]

On December 31, 2011, San Diego Police Officer Stephanie Ott responded to a report of a suicide threat made by then seventy-two-year-old Esther Boggess. A

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2] This portion of the factual background is taken from the declaration of the responding police officer.

2

concerned family member had called the San Diego Police Department after Boggess said she wanted to "get it over with" and that she wanted to shoot herself with a gun but was just missing the bullets.

When Officer Ott arrived at Boggess's apartment, she asked if there were any firearms in the house and Boggess replied, "Yes, but it is put away right now." Officer Ott called Boggess's niece, the family member who had called the police, to confirm her concerns. The niece had been talking with her aunt on the phone earlier when she made the statements concerning her desire to shoot herself. Boggess told her niece that she was depressed about ailing health and stated, "What's the point of living, what else is gonna happen now?" Boggess admitted to Officer Ott that she made that remark to her niece over the phone. Boggess was detained and transported to the County of San Diego Mental Health Services (CMH) for an evaluation. While driving to the hospital, Boggess told Officer Ott that she was only joking when she made those statements and mumbled several times, "What else is gonna happen now?" The officer found three handguns in Boggess's closet and had them impounded.

*Mental Health Evaluation*

Upon arrival to CMH, Boggess received a psychosocial assessment, medication evaluation, and crisis stabilization. She was evaluated by Alan Edwards, M.D., who noted Boggess had expressed concerns about her failing health. She also stated that she complained to her niece about her car being towed and the extremely high storage fee. Boggess denied being suicidal or having any history of earlier suicide attempts or psychiatric hospitalizations. On the day of her assessment, when asked about any

3

suicidal thoughts she told a nurse, "I'm Catholic—it goes against God's law."  Dr. Edwards noted Boggess was generally "dysphoric," (feeling unhappy or unwell, see Merriam-Webster's Collegiate Dictionary (11th ed. 2006) p. 389) and diagnosed her with depressive disorder with contributing psychosocial and environmental problems of economic hardship and access to healthcare.

Dr. Edwards opined that Boggess's current potential for harm "could be high as the patient has few supports, multiple stresses, and lethal means."  After Dr. Edwards's evaluation, he admitted Boggess to the emergency psychiatric unit on an involuntary basis.  He indicated that "[d]ischarge will be considered when the patient is no longer suicidal, when adequate support system has been ascertained, and when reasonable stresses have been dealt with."

A CMH client assignment & service record shows that Boggess was referred out to Mesa Vista hospital because she required a higher level of medical care.  Her legal status at the time of discharge from CMH was marked as "5150"[3] and it was noted that she had previously had access to weapons.  At the time of transfer Boggess was listed as stable, but was transferred by ambulance because she posed a risk of harm to herself or others.

---

[3]     Section 5150 states in part that "any person, as a result of mental disorder . . . upon probable cause [can] be taken . . . into custody and place[d] . . . in a facility designated by the county and approved by the State Department of Social Services as a facility for 72-hour treatment and evaluation."

4

*The Section 8102 Hearing*

Pursuant to section 8102, City filed a petition to retain and destroy the firearms seized from Boggess. Boggess requested a hearing (§ 8102, subds. (e), (f)), at which the trial court and parties reviewed her medical records. At the hearing, in response to questions regarding the police report and the statements made to her niece over the phone, Boggess explained that the guns belonged to her late husband; that she had not touched them in six years and did not know how to put a bullet in them. She admitted talking to her niece, who had called after she found out Boggess's car had been towed, but Boggess stated she was "kidding" with her niece and the only thing she said was, "With that money I'm going to spend, I don't think—why I am going to live?" Boggess asserted her niece just "imagine[d]" that she was going to kill herself, and that her religious beliefs precluded her from considering suicide.

During the hearing, City presented medical records and a police report to the court. The court acknowledged that Boggess was under financial pressure and was having medical problems at the time of the incident. It took note of the fact that Boggess was involuntarily admitted for psychiatric evaluation stating, "Not everybody who presents to CMH gets admitted. They admitted you." The court concluded that CMH was concerned about Boggess's mental well-being, and rather than accepting Boggess's explanations, the court relied on the medical opinion that she was a danger to herself. Though the court accepted Boggess's representation that she was an educated dentist, it found her answers to be "nonresponsive" and "rambling" and that the petitioners had proved by a preponderance of the evidence that return of the firearms would be likely to

5

result in endangering Boggess or others. The court ordered the firearms seized be forfeited and destroyed.

## DISCUSSION

### I. *Overview of Section 8102*

Section 8102 authorizes the seizure and possible forfeiture of weapons belonging to persons detained for examination under section 5150 because of their mental condition. (*Rupf v. Yan* (2000) 85 Cal.App.4th 411, 416-417 (*Rupf*); *People v. One Ruger .22-Caliber Pistol* (2000) 84 Cal.App.4th 310, 312.) Section 8102, subdivision (a) provides in part: "Whenever a person, who has been detained or apprehended for examination of his or her mental condition . . . is found to own, have in his or her possession or under his or her control, any firearm whatsoever, or any other deadly weapon, the firearm or other deadly weapon shall be confiscated by any law enforcement agency or peace officer, who shall retain custody of the firearm or other deadly weapon." At the time the weapons are seized, the agency must notify the person from whom the weapon is seized of the procedure for the return of the confiscated firearms. (§ 8102, subd. (b).) The law enforcement agency must make the firearms available for return unless it timely files a petition to determine whether returning them "would be likely to result in endangering the person or others, and . . . send[s] a notice advising the person of his or her right to a hearing on this issue." (§ 8102, subds. (c), (d); *Rupf,* 85 Cal.App.4th at p. 420.) Section 8102 thus "places the onus upon law enforcement to initiate the forfeiture proceeding, and to bear the burden of proof on the issue of the danger presented by return of the weapons." (*Rupf,* at p. 420, citing § 8102, subd. (c).)

6

"Section 8102 directly safeguards public health and safety by allowing law enforcement officers to confiscate any firearm in the possession or control of a person who is appropriately detained or apprehended for a mental examination. Keeping a firearm away from a mentally unstable person is a reasonable exercise of the police power. It is not unreasonable to conclude there is a significant risk that a mentally unstable gun owner will harm himself or others with the weapon." (*Rupf, supra,* 85 Cal.App.4th at p. 423.)

II. *The Court's Forfeiture Decision is Supported by Substantial Evidence*

Boggess challenges the sufficiency of the evidence to support the trial court's factual conclusion that she would not be likely to use firearms in a safe and lawful manner. Comparing the circumstances of her case to those in *People v. Keil* (2008) 161 Cal.App.4th 34 and *People v. Jason K.* (2010) 188 Cal.App.4th 1545, she maintains the sole evidence submitted by City was medical records of her three-hour hospitalization and her niece's remarks, which she characterizes as a "misinterpretation." As Boggess summarizes the evidence, she claims she "never threatened to shoot or harm herself or others" and she points out she "steadfastly denied having threatened to harm herself" at the hospital. Boggess also argues there was no evidence that she had ever used her firearms in a dangerous way, nor was there evidence suggesting she had a prior history of mental illness or a criminal record. Finally, Boggess states she was stable when discharged from the hospital, and had only been diagnosed with depression "not otherwise specified," which is not enough to show she would be unlikely to use her late

husband's firearms in a safe and lawful manner, or that their return to her would result in danger to her or others.

We apply the substantial evidence standard of review. (*People v. Jason K., supra,* 188 Cal.App.4th at p. 1553; *People v. Keil, supra,* 161 Cal.App.4th at p. 38.) An order authorizing the destruction of the weapons can only withstand appellate scrutiny if "substantial evidence supports the court's determination that return of the firearms to appellant would likely result in endangering appellant or other persons." (*Rupf, supra,* 85 Cal.App.4th at p. 428.) In determining whether a trial court's ruling is supported by substantial evidence, the appellate court should view the whole record in the light most favorable to the ruling, resolving all evidentiary conflicts and drawing all reasonable inferences supporting the court's decision. (*People v. Jason K.,* at p. 1553.) If the trial court finds City has not met its burden of proof, the restriction is removed, and the person shall be entitled to own, possess, control, receive or purchase firearms, unless another legal restriction applies. (*People v. Keil,* at p. 38, citing § 8103, subd. (f)(1).)

Looking to City's evidence and all reasonable inferences favoring the superior court's findings, we conclude the record contains substantial evidence to support the granting of the petition and its finding that return of the firearms would endanger Boggess or others. The mental health evaluation in the record indicates Boggess was under significant stress regarding her health and financial matters. Contrary to Boggess's characterization of the evidence as showing she never threatened to shoot herself, her statements to her niece documented by Officer Ott—that Boggess was depressed about her health and car being impounded, wanted to "get it over with," and was going to shoot

8

herself with a gun but was missing the bullets—plainly show otherwise. These comments worried Boggess's niece enough to call the police. Further, Boggess was not only presented to the CMH, but was admitted to the emergency psychiatric unit on an involuntary basis for depression.

The medical records showed Boggess was diagnosed with "depressive disorder" and a medical evaluation noted that she was "a woman with emerging stresses, some limited coping skills, and fairly distant support system," with impaired insight and judgment. The judge considered these factors in making the ultimate assessment of the danger posed by Boggess. Boggess could have presented her own evidence of her medical or mental health condition (see, e.g., *Rupf, supra,* 85 Cal.App.4th at p. 424 ["Both the gun owner and the authorities have the opportunity to present evidence of the gun owner's mental condition, including introduction of testimony by medical professionals"]) but she instead chose to argue she was "kidding" and that her niece misinterpreted her statements, a claim the trial court was entitled to disbelieve and reject.

Even if Boggess's statements triggering the December 31 incident were the result of her niece's misunderstanding, the trial court was presented with police statements and medical records persuading it that City's evidence met the preponderance standard. Further, after hearing from Boggess, the court determined, implicitly if not expressly, that the circumstances that lead to the section 5150 detention had not changed. "The court may properly consider whether the circumstances leading to the section 5150 detention might occur again and whether possession or control of those confiscated weapons in

9

such circumstance would pose a risk of danger to appellant or to others." (*Rupf, supra,* 85 Cal.App.4th at p. 424.)

We are not convinced by Boggess's comparison of her circumstances with those individuals in *People v. Keil, supra,* 161 Cal.App.4th 34 and *People v. Jason K, supra,* 188 Cal.App.4th 1545. Substantial evidence review turns on whether the facts presented in each case support the findings of the trial court. Looking to the specific facts of *Keil* and *Jason K.* is unhelpful to our analysis. In sum, the medical reports, police observations, statements from Boggess's niece, and Boggess's own conduct at the hearing constitute substantial evidence to support the trial court's findings that return of the firearms would be likely to result in endangering Boggess or others.

III. *Section 8102 Does Not Violate the Second and Fourteenth Amendment Right to Bear Arms.*

Boggess contends, in light of *Heller, supra,* 554 U.S. 570 and *McDonald., supra,* 561 U.S. ___ [130 S.Ct. 3020], section 8102 is facially unconstitutional because it denies her fundamental Second and Fourteenth Amendment right to bear arms "based on little or scant proof." In so arguing, Boggess urges us to disregard *Rupf, supra,* 85 Cal.App.4th 411, in which the court held section 8102 was not facially invalid because it did not deny an individual gun owner his or her substantive due process rights nor was it unconstitutionally vague. (*Rupf,* at pp. 419-428.) Boggess argues *Heller* and *McDonald* have invalidated the "collective rights" model of the Second Amendment applied in

10

*Rupf*,[4] and that *Heller* and *McDonald* now confirm there is a fundamental and individual constitutional right to bear arms.[5]  Although a defendant's failure to present an issue to the trial court generally forfeits it on appeal, we exercise our discretion to consider the issue to the extent it presents a pure question of law or involves undisputed facts.  (See *In re Sheena K.* (2007) 40 Cal.4th 875, 880-881, 887-888, fn. 7.)

We begin by recognizing the "strong presumption of the constitutionality of an act of the Legislature."  (*Delaney v. Lowery* (1944) 25 Cal.2d 561, 569.)  " 'In considering the constitutionality of a legislative act we presume its validity, resolving all doubts in favor of the Act.  Unless conflict with a provision of the state or federal Constitution is clear and unquestionable, we must uphold the Act.' "  (*Amwest Sur. Ins. Co. v. Wilson* (1995) 11 Cal.4th 1243, 1252.)  "[M]ere doubt by the judicial branch of the government as to the validity of a statute will not afford a sufficient reason for a judicial declaration

---

4     The "collective rights" view interprets the Second Amendment right to bear arms as securing only the right of the states to have a well regulated militia, not a right of individuals.  (Glenn Harlan Reynolds, *A Critical Guide to the Second Amendment* (1995) 62 Tenn. L.Rev. 461, 488-490; see *Heller, supra,* 554 U.S. at p. 579 [rejecting notion that Second Amendment may be exercised "only through participation in some corporate body" to maintain effective state militias].)

5     We note Boggess's arguments have several flawed premises.  First, section 8102 does not eliminate a detainee's right to possess any and all firearms.  Rather, as City points out, it implicates only the detainee's property right in the specific firearms confiscated by law enforcement.  The statute is further limited to persons who are detained for examination of their mental condition, and those weapons that were in their custody and control at time of incident leading to their detention for a mental health evaluation.  Second, section 8102 requires a preponderance standard of proof that return of firearms is likely to result in endangering Boggess or others, and thus Boggess's bare assertion that it is permits forfeiture of firearms on "little or scant proof of mental illness" is incorrect.

11

of its invalidity, but . . . statutes must be upheld as constitutional unless their invalidity *clearly, positively, and unmistakably appears*." (*People v. Superior Court of San Bernardino County* (1937) 10 Cal.2d 288, 298, italics added.) These principles govern a challenge to the facial validity of a statute. (See, e.g., *Calfarm Ins. Co. v. Deukmejian* (1989) 48 Cal.3d 805, 814-815 [applying presumption in challenge to facial constitutionality of initiative.)

When confronted with a facial challenge to the constitutional validity of a statute, the California Supreme Court has sometimes articulated differing standards. (*Coffman Specialties, Inc. v. Department of Transp.* (2009) 176 Cal.App.4th 1135, 1145, citing *Guardianship of Ann S.* (2009) 45 Cal.4th at 1110, 1126.) "Under the strictest test, the statute must be upheld unless the party establishes the statute ' "inevitably pose[s] a present total and fatal conflict with applicable constitutional prohibitions." ' [Citation.] Under the more lenient standard, a party must establish the statute conflicts with constitutional principles ' "in the generality or great majority of cases." ' [Citation.] Under either test, the plaintiff has a heavy burden to show the statute is unconstitutional in all or most cases, and ' "cannot prevail by suggesting that in some future hypothetical situation constitutional problems may possibly arise as to the particular *application* of the statute." ' " (*Coffman Specialties, Inc.,* at p. 1145; see also *Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084 [in a facial challenge, the court considers only the text of the statute itself, not its application to the particular circumstances of an individual].) If a statute is constitutional in its general and ordinary application, the statute is not facially unconstitutional merely because "there might be some instances in which application of

12

the law might improperly impinge upon constitutional rights." (*American Academy of Pediatrics v. Lungren* (1997) 16 Cal.4th 307, 347; see also *Guardianship of Ann S., supra,* 45 Cal.4th at p. 1132; *People v. Yarbrough* (2008) 169 Cal.App.4th 303, 311.)

The Second Amendment of the United States Constitution provides:  "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." (U.S. Const., 2nd Amend.)  The laws at issue in *Heller* and *McDonald* effectively banned the possession of handguns in the home.  (*Heller, supra,* 554 U.S. at p. 574; *McDonald*, *supra*, 561 U.S. at p. ___ [130 S.Ct. at p. 3026].)  This court discussed the cases in *Jason K.*:  "In *Heller*, the high court evaluated the meaning of the Second Amendment, and concluded the constitutional right to possess firearms was not limited to possession for military use and included an individual's right to possess firearms in the home for self-defense.  [Citation.]  But the court stated that '[l]ike most rights, the right secured by the Second Amendment is not unlimited' [citation], and specifically noted that *nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill*, or laws forbidding the carrying of firearms in sensitive places . . . .' [Citation.]  The court further explicitly recognized 'the problem of handgun violence in this country,' and confirmed that the 'Constitution leaves . . . a variety of tools for combating that problem . . . .' " (*People v. Jason K., supra,* 188 Cal.App.4th at p. 1555, italics added.)

In *McDonald*, the court held the Second Amendment right is "fully applicable to the States" through the Due Process Clause of the Fourteenth Amendment.  (*McDonald,*

*supra,* 561 U.S. at p. ___ [130 S.Ct. at p. 3026] (plur. opn. of Alito, J.); *id*. at pp. 3058, 3088 (conc. opn. of Thomas, J.); see *People v. Jason K.*, *supra*, 188 Cal.App.4th at p. 1555; *People v. Delacy* (2011) 192 Cal.App.4th 1481, 1487.) However, it expressly "repeat[ed] [its] assurances" from *Heller* that "the right to keep and bear arms is not 'a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose' " and that its holding "did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill . . . .' " (*McDonald, supra,* 561 U.S. at p. ___ [130 S.Ct. at p. 3047], quoting *Heller, supra,* 554 U.S. at pp. 626-627.)

The holdings of *Heller* and *McDonald* address whether the Second Amendment protects the right to possess a handgun in the home for self defense; they did not extend Second Amendment protections to persons whose firearms are seized because they were found to be a danger to themselves by reason of their mental health.[6] To the contrary, as indicated above, both *Heller* and *McDonald* identified an expressly nonexclusive list of traditional limitations on the right to bear arms, characterizing them as "presumptively lawful regulatory measures . . . ." (*Heller, supra,* 554 U.S. at p. 627, fn. 26; *McDonald, supra,* 561 U.S. ___ [130 S.Ct. at p. 3047] (plur. opn. of Alito, J.); see *People v. Delacy, supra,* 192 Cal.App.4th at p. 1487.) Section 8102, which prohibits a person detained

---

6      In *Heller*, the court indicated that, if confronted with a constitutional challenge to its nonexclusive list of presumptively lawful exceptions to the Second Amendment, there would "be time enough to expound upon the historical justifications for the exceptions [it] mentioned if and when those exceptions [came] before [it]." (*Heller, supra,* 554 U.S. at p. 635.)

under section 5150 from recovering their seized firearms upon proof by the seizing agency that returning the weapon would be likely to result in endangering that person or others, is such a regulatory measure. We reject that in *Heller* and *McDonald* the U.S. Supreme Court categorically invalidated such laws, which are designed to keep firearms out of the hands of a dangerous person.

Moreover, though *Rupf* relies on authorities predating and now abrogated by *Heller* and *McDonald*,[7] neither *Heller* or *McDonald* alter *Rupf*'s recognition of the state of California's "long . . . established" regulation of firearms as a "proper police function." (*Rupf, supra,* 85 Cal.App.4th at p. 421, citing *Galvan v. Superior Court of City and County of San Francisco* (1969) 70 Cal.2d 851, 866.) The *Rupf* court pointed to the legitimacy of the ends sought to be accomplished by section 8102: "The exercise of the police power to regulate firearms is clearly related to the public health, safety and welfare. [Citation.] Respondent identifies the object of the statute as providing a means whereby authorities can confiscate firearms in an emergency situation and may keep firearms from mentally unstable persons. The legislative history of the statute expressly

---

7    In *Heller*, the court determined the treatment of the Second Amendment in *Lewis v. United States* (1980) 445 U.S. 55, 65-66 [Second Amendment guarantees no right to keep and bear a firearm that does not have some reasonable relationship to the preservation or efficiency of a well regulated militia]) to be "footnoted dictum . . . ." (*Heller, supra,* 554 U.S. at p. 625, fn. 25.) *Rupf* relied on *Lewis v. United States* for the proposition that " '[l]egislative restrictions on the use of firearms are neither based upon constitutionally suspect criteria, nor do they trench upon any constitutionally protected liberties.' " (*Rupf, supra,* 85 Cal.App.4th at p. 421.) It also relied on Ninth Circuit and other federal authorities—now abrogated—holding that the Second Amendment is a right held by the states, and does not protect the possession of a weapon by a private citizen. (*Ibid.,* quoting *Hickman v. Block* (9th Cir. 1996) 81 F.3d 98, 101.)

15

recognizes the urgency and importance of such an objective . . . ."  (*Rupf,* at p. 422.)

"Keeping a firearm away from a mentally unstable person is a reasonable exercise of the police power.  It is not unreasonable to conclude there is a significant risk that a mentally unstable gun owner will harm [her]self or others with the weapon."  (*Rupf,* at p. 423.)

We acknowledge *Heller* and *McDonald's* expansion of the right to own and bear arms.  (*Heller, supra,* 554 U.S. 570 at pp. 2797, 2827-2828, 2821-2822; *McDonald, supra,* 561 U.S. ___ [130 S.Ct. at p. 3026] (plur. opn. of Alito, J.); *id*. at pp. ___, ___ [130 S.Ct. at pp. 3058, 3088] (conc. opn. of Thomas, J.).)  However, neither holding prohibits the government from regulating the possession of guns by persons proven to be dangerous due to mental illness or suggests that those regulations are in direct conflict with the Second Amendment.  Subsequent decisions have affirmed that the state may ensure that firearms are not in the hands of someone who may use them dangerously. (See *People v. Keil, supra,* 161 Cal.App.4th 34; *People v. Jason K., supra,* 188 Cal.App.4th 1545.)  Section 8102 has procedural devices and burdens set in place to remedy constitutional deficiencies (see *People v. One Ruger .22-Caliber Pistol, supra,* 84 Cal.App.4th at pp. 313-314) and *Heller* and *McDonald* do not alter its validity.

For the foregoing reasons, we conclude persons whose firearms are seized and forfeited under section 8102 fall outside the scope of the Second Amendment, Boggess has not demonstrated the statute to be facially unconstitutional, and California may therefore enforce the law to protect the health, safety and welfare of its citizens.

16

DISPOSITION

The judgment is affirmed.


                                                            O'ROURKE, J.

WE CONCUR:


McDONALD, Acting P. J.


AARON, J.

Filed 6/11/13

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CITY OF SAN DIEGO et al., | D061715 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. MCR 12-006) |
| ESTHER BOGGESS, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Appellant. | |

THE COURT:

The opinion filed May 15, 2013, is ordered certified for publication.

McDONALD, Acting P. J.

Copies to:  All parties