Filed 4/2/15  City of San Jose v. Rodriguez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CITY OF SAN JOSE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>EDWARD V. RODRIGUEZ,<br><br>    Defendant;<br><br>LORI RODRIGUEZ,<br><br>    Intervener and Appellant. | H040317<br>(Santa Clara County<br>Super. Ct. No. 1-13-CV241669) |

## I.  INTRODUCTION

The City of San Jose police officers who responded to a domestic disturbance call at the home of Edward V. Rodriguez determined that he was a danger to himself and others and had him transported to Santa Clara Valley Medical Center for 72-hour treatment and evaluation under Welfare and Institutions Code section 5150.[1]  The police officers also seized 12 firearms from the home pursuant to section 8102, subdivision (a), which requires confiscation of any firearms owned by or found in the possession or control of a person detained for an examination of his or her mental condition.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

The City of San Jose (City) subsequently filed a petition for disposition of the firearms in which the City requested a court order allowing forfeiture of the confiscated firearms pursuant to section 8102, subdivision (c).  Edward V. Rodriguez's wife, appellant Lori Rodriguez, opposed the petition and sought return of the firearms to her.[2] After an evidentiary hearing, the trial court determined that return of the confiscated firearms to the Rodriguez home would be likely to result in the endangerment of Edward or others, and granted City's petition.

On appeal, Lori contends that the trial court erred because the order granting City's petition is not supported by substantial evidence of danger and also violates her right to keep and bear arms under the Second Amendment to the United States Constitution.  For the reasons stated below, we determine that the trial court's order under section 8102, subdivision (a) is supported by substantial evidence.  We also determine that Lori has not shown that her Second Amendment rights were violated by the trial court's order.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  *City's Petition for Disposition of the Firearms*

On February 22, 2013, City filed a petition for disposition of the firearms pursuant to section 8102, subdivision (c) that named Edward as the respondent.  City stated that the firearms that were the subject of the petition came into police custody on January 24, 2013, when police officers responding to a domestic disturbance call at the Rodriguez home determined that Edward was a danger to himself or others.  Edward was then transported to a medical center on a 72-hour hold for medical treatment and a

---

[2] Since Edward V. Rodriguez and appellant Lori Rodriguez have the same surname, we will refer to them by their first names for purposes of clarity and meaning no disrespect.

psychological evaluation pursuant to section 5150. After Edward was transported, police officers conducted a protective sweep and confiscated 12 firearms from the home.

In its petition, City requested that the trial court make a finding under section 8102 as to whether return of the weapons would be likely to endanger Edward or others and, if the finding of danger was made, order that the petition be granted and the weapons forfeited. Alternatively, if no finding of danger was made, City requested that the San Jose Police Department retain custody of the weapons for no more than two years unless Edward obtained a court order allowing their return.

**B. *Lori's Response to City's Petition***

Edward did not file a response to City's petition for disposition of firearms. Lori filed a response in opposition to the petition in which she designated herself as Edward's "co-respondent." In her supporting declaration, Lori stated that she had been married to Edward for nearly 20 years; Edward was placed on a psychiatric hold pursuant to section 5150 on January 24, 2013; Edward was currently prohibited from owning, acquiring, or possessing firearms or ammunition; and the confiscated firearms had been kept in a safe in their home and were community property.

Lori further declared that no firearms were involved in the event that triggered Edward's January 24, 2013 episode; she had opened the gun safe for the police officers who took all of their firearms; and she acknowledged that she had a legal duty to prevent Edward from obtaining access to any firearms or ammunition under her control while he remained a prohibited person. Additionally, Lori attached documents to her declaration that showed her ownership of a firearm safe and her April 2013 change to the safe's combination.

In her hearing brief, Lori argued that the trial court had "no power to interfere with [her] Second Amendment 'right to keep and bear arms,' " since she was not prohibited from acquiring or possessing firearms and had promised to take all steps required under California law to secure the firearms in a gun safe.

3

On June 21, 2013, the parties filed a stipulation and order stating that the parties agreed that "Lori Rodriguez has standing in this action in that she has at least a community property interest in the firearms at issue in these proceedings."

## C. *Evidentiary Hearing*

The following is a summary of the evidence presented at the August 9, 2013 evidentiary hearing on City's petition.

On January 24, 2013, Police Officer Steven Valentine and other City of San Jose police officers arrived at the Rodriguez home to investigate a domestic disturbance. They were responding to Lori's 911 call regarding Edward's behavior and her concern that he might be suffering from a mental illness. Police officers had previously responded to at least two calls of a domestic disturbance at the Rodriguez home and were aware that there were firearms in the home.

Upon his arrival at the Rodriguez home on January 24, 2013, Officer Valentine observed that Edward was perspiring heavily and had rapid respiration. Officer Valentine also observed that Lori was afraid of Edward. Edward claimed that he was affiliated with the CIA, was acting irrationally, and had bizarre and aggressive mannerisms. Officer Valentine believed that Edward was delusional.

When Officer Valentine asked Edward if he wanted to hurt himself, Edward responded by attempting to break his own thumb. Based on his observations and Edward's attempt to hurt himself, Officer Valentine determined that Edward, who weighed nearly 400 pounds, was a danger to himself and others.

San Jose Fire Department personnel and medical personnel arrived to transport Edward to Santa Clara Valley Medical Center (VMC) for a 72-hour hold and psychological evaluation pursuant to former section 5150.[3] After Edward was secured on

---

[3] At the time of Edwards's detention, former section 5150 provided in part: "When any person, as a result of mental disorder, is a danger to others, or to himself or (continued)

4

the gurney, he continued to break the restraints. Medical personnel requested that a police officer accompany them in the ambulance. Edward was then transported to VMC, where he was determined to be a danger to himself and others and admitted to the hospital pursuant to former section 5151[4] and section 5152.[5]

Officer Valentine remained at the Rodriguez home after Edward was transported. He advised Lori that that he would need to confiscate the weapons in the home pursuant to section 8102. Lori unlocked a gun safe by using the key she kept in her possession and a combination lock. Police officers then removed 12 firearms, including three revolvers, three shotguns, a handgun, a rifle, and four semi-automatic rifles. Police officers did not find any firearms outside the gun safe. The firearms had been purchased by Lori or Edward or acquired from her family. Although one firearm belonged to Lori, all 12 firearms were confiscated because Edward had access to them.

In February 2013, City filed a petition for disposition of the firearms to which Lori filed a response in April 2013. In May 2013, Lori received notification from the

---

herself, or gravely disabled, a peace officer, member of the attending staff, as defined by regulation, of an evaluation facility designated by the county, designated members of a mobile crisis team provided by Section 5651.7, or other professional person designated by the county may, upon probable cause, take, or cause to be taken, the person into custody and place him or her in a facility designated by the county and approved by the State Department of Social Services as a facility for 72-hour treatment and evaluation."

[4] At the time of Edward's detention, former section 5151 provided in part: "If the facility for 72-hour treatment and evaluation admits the person, it may detain him or her for evaluation and treatment for a period not to exceed 72 hours. . . . Prior to admitting a person to the facility for 72-hour treatment and evaluation pursuant to Section 5150, the professional person in charge of the facility or his or her designee shall assess the individual in person to determine the appropriateness of the involuntary detention."

[5] Section 5152, subdivision (a) provides in part: "Each person admitted to a facility for 72-hour treatment and evaluation under the provisions of this article shall receive an evaluation as soon as possible after he or she is admitted and shall receive whatever treatment and care his or her condition requires for the full period that he or she is held."

5

California Department of Justice Bureau of Firearms that she is eligible to both possess and purchase firearms. At the hearing, Lori testified that she has not committed a felony and has not been detained under section 5150.

### D. *Trial Court Order*

In its order of September 30, 2013, the trial court granted City's petition for disposition of weapons. The order also states: "The City agrees to hold the weapons pending final disposition or resolution of this matter in accordance with its general practices."

During the hearing on the petition, the trial court provided the court's reasoning for granting the petition. The court stated: "I mean the elephant in the room is [Edward] goes back and somehow he overpowers [Lori] or pressures her or something to open the safe. I mean that's a real concern I have. At the end of the day this is a public safety issue. The guns are right there. They're low hanging fruit. Yeah, they're behind the safe. But, you know, I don't know the dynamics of the relationship. I know the police have been out there. I know there is a history of instability. I'm real concerned about releasing these weapons back to home, even behind the safe, when he's got . . . the ability to, you know, coerce [Lori] somehow into opening that safe. That concerns me."

The trial court also stated: "[A]t the end of the day, is what my responsibility is, is public safety. And that's what guides me. And I'm not saying I'm ignoring her Constitutional Rights or anybody else's rights. . . . I have to determine whether it's appropriate to release those guns given the facts in this particular case and the situation." The court then ruled, "I'm not going to order the release of the guns to the respondent. I don't think it's appropriate under the circumstances."

The trial court's order did not require forfeiture or destruction of the confiscated firearms. During the hearing, City's attorney noted that other options were available for disposition of the firearms: "The City has proposed a few options. Either the guns be held at another location away from the home. They could also be sold. The City is

6

certainly interested or willing to enter into that type of stipulation to sell them through a third party gun dealer. Or they could be held in the house if they're rendered inoperable."

As to Lori's claim of a community property interest in the confiscated firearms, the trial court stated: "I think there are viable alternatives that need to be explored. This is the community possession of the respondent and whether it's by sale or release to a separate place. I'm going to let you folks work that out. So with respect to the request to release the guns back to [Lori], I'm going to deny that request."

Thereafter, Lori filed a notice of appeal from the September 30, 2013 order.

### III. DISCUSSION

On appeal, we understand Lori to challenge the trial court's order granting City's petition for disposition of firearms on two grounds, insufficiency of the evidence and violation of her Second Amendment right to keep and bear arms. We will begin our evaluation of her claims with an overview of the statutory framework for the confiscation of firearms from a person who has been detained for examination of his or her mental condition and the disposition of confiscated firearms.

#### A. *The Statutory Framework*

"Two firearm statutes come into play when a person is detained under section 5150 as a danger to himself [or herself] or others. Section 8103 will prohibit his [or her] possession of firearms for a five-year period.[6] Section 8102[7] authorizes

---

**[6]** Section 8103, subdivision (f)(1) provides in part: "No person who has been (A) taken into custody as provided in Section 5150 because that person is a danger to himself, herself, or to others, (B) assessed within the meaning of Section 5151, and (C) admitted to a designated facility within the meaning of Sections 5151 and 5152 because that person is a danger to himself, herself, or others, shall own, possess, control, receive, or purchase, or attempt to own, possess, control, receive, or purchase any firearm for a period of five years after the person is released from the facility." The person may request a hearing to lift the restriction. (§ 8103, subd. (f)(3).)

**[7]** Section 8102, subdivision (a) provides in part: "Whenever a person, who has been detained or apprehended for examination of his or her mental condition . . . is found (continued)

7

confiscation of any weapons he [or she] already possesses." (*People v. Keil* (2008) 161 Cal.App.4th 34, 37 (*Keil*).) Section 8102 also authorizes "possible forfeiture of weapons belonging to persons detained for examination under section 5150 because of their mental condition. [Citations.]" (*City of San Diego v. Boggess* (2013) 216 Cal.App.4th 1494, 1500 (*City of San Diego*).)

As stated in *City of San Diego*, " '[s]ection 8102 directly safeguards public health and safety by allowing law enforcement officers to confiscate any firearm in the possession or control of a person who is appropriately detained or apprehended for a mental examination. Keeping a firearm away from a mentally unstable person is a reasonable exercise of the police power. It is not unreasonable to conclude there is a significant risk that a mentally unstable gun owner will harm himself [or herself] or others with the weapon.' [Citation.]" (*City of San Diego*, *supra*, 216 Cal.App.4th at p. 1500.)

The statutory scheme also provides the procedure for the return of the confiscated firearms to the person who was detained under section 5150. At the time of the August 2013 hearing on City's petition for disposition of firearms, former section 8102, subdivision (b) (now § 8102, subd. (b)(2)) provided in part: "Where the person is released, the professional person in charge of the facility, or his or her designee, shall notify the person of the procedure for the return of any firearm or other deadly weapon which may have been confiscated."

If the law enforcement agency that confiscated the firearms does not make the firearms available for return upon release of the detained person, the person may request

---

to own, have in his or her possession or under his or her control, any firearm whatsoever, or any other deadly weapon, the firearm or other deadly weapon shall be confiscated by any law enforcement agency or peace officer, who shall retain custody of the firearm or other deadly weapon."

a hearing on return of the firearms. (§ 8102, subds. (e), (f).) The law enforcement agency may also request a hearing: "Upon the release of a person as described in subdivision (b), the confiscating law enforcement agency shall have 30 days to initiate a petition in the superior court for a hearing to determine whether the return of a firearm or other deadly weapon would be likely to result in endangering the person or others, and to send a notice advising the person of his or her right to a hearing on this issue." (§ 8102, subd. (c).) "Section 8102 thus 'places the onus upon law enforcement to initiate the forfeiture proceeding, and to bear the burden of proof on the issue of the danger presented by return of the weapons.' [Citations.]" (*City of San Diego*, *supra*, 216 Cal.App.4th at p. 1500.)

"If, after a hearing, the court determines that the return of the firearm or other deadly weapon would likely endanger the person or others, the law enforcement agency may destroy the firearm within 180 days from the date that the court makes that determination, unless the person contacts the law enforcement agency to facilitate the sale or transfer of the firearm to a licensed dealer pursuant to Section 33870 of the Penal Code." (§ 8102, subd. (h).)

The standard of review for the trial court's order granting a petition for disposition of firearms under section 8102 is substantial evidence. (*City of San Diego*, *supra*, 216 Cal.App.4th at p. 1501.) "In determining whether a trial court's ruling is supported by substantial evidence, the appellate court should view the whole record in the light most favorable to the ruling, resolving all evidentiary conflicts and drawing all reasonable inferences supporting the court's decision. [Citation.]" (*Ibid*.) "We affirm if 'substantial evidence supports the court's determination that return of the firearms to appellant would be likely to result in endangering appellant or other persons.' [Citation.]" (*Keil*, *supra*, 161 Cal.App.4th at p. 38.)

**B.** *Analysis*

### 1. Substantial Evidence

We understand Lori to argue on appeal that the trial court's order granting City's petition for disposition of firearms and declining to return the firearms to her is not supported by substantial evidence. According to Lori, the evidence showed that she is not prohibited from owning or possessing firearms and if the confiscated firearms were returned to her, she could secure them in a gun safe to prevent Edward from having unauthorized access. Lori also offers to have the title to the firearms transferred to her. In addition, Lori points out that City's counsel conceded during the hearing that there is nothing to prevent her from buying more firearms and bringing them to the Rodriguez home.

In response, City relies on the statement in *City of San Diego* that " '[t]he court may properly consider whether the circumstances leading to the section 5150 detention might occur again and whether possession or control of those confiscated weapons in such circumstance would pose a risk of danger to appellant or to others.' [Citation.]" (*City of San Diego*, *supra*, 216 Cal.App.4th at p. 1502.) City asserts that the undisputed evidence shows that the circumstances here included Edward's behavior when Officer Valentine detained him, as well as Edward's size and the prior police responses to the Rodriguez home. City also asserts that return of the confiscated firearms to Lori would have "the practical effect of returning them to Edward," who is prohibited from accessing firearms.

We begin by noting that section 8102 expressly provides the procedure for the return of firearms confiscated by a law enforcement agency only to the person who was detained under section 5150. Section 8102 is silent as to the return of the confiscated firearms to any other person. Accordingly, the only issue to be decided at a hearing under section 8102, subdivision (c) is whether return of the firearms to the previously detained person "would be likely to result in endangering the person or others." (§ 8102,

10

subd, (c); see also *id.*, subd. (h).)  On appeal from a trial court order denying return of confiscated firearms under section 8102, the reviewing court decides the narrow issue of whether substantial evidence supports the trial court's determination that return of the firearms to the person who was detained under section 5150 would be likely to result in endangering that person or other persons.  (*Keil*, *supra*, 161 Cal.App.4th at p. 38.)

In this case, Edward did not oppose the City's petition for disposition of the firearms.  The parties filed a stipulation and order stating that the parties agreed that "Lori Rodriguez has standing in this action in that she has at least a community property interest in the firearms at issue in these proceedings."  Since the parties stipulated that Lori has standing in this matter, we will consider whether the trial court's order granting City's petition is supported by substantial evidence that return of the firearms to the Rodriguez home would be likely to result in endangering Edward or others.  (§ 8102, subds. (c), (h).)

Having reviewed the record in the light most favorable to the trial court's order (*City of San Diego*, *supra*, 216 Cal.App.4th at p. 1501), we agree with City that the trial court's order is supported by substantial evidence.  The evidence showed that there had been two prior calls of a domestic disturbance at the Rodriguez home; Lori made the 911 call regarding Edward's condition on the day of his detention; Lori appeared to be afraid of Edward; Edward's behavior was bizarre and delusional; Edward had attempted to break his own thumb; Edward weighed 400 pounds and had broken free of the gurney restraints; and medical personnel had requested that a police officer accompany them in the ambulance transporting Edward to the hospital.  VMC personnel then determined that Edward was a danger to himself and others and he was admitted to the hospital pursuant to sections 5151 and 5152.  Moreover, the trial court was not convinced by Lori's testimony that she could safely store the firearms and prevent Edward from having access to them.  " 'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.'  [Citation.]"  (*People v. Albillar* (2010) 51 Cal.4th 47, 60.)

11

We therefore conclude that substantial evidence supports the trial court's order granting City's petition for disposition of firearms under section 8102 on the ground that return of the confiscated firearms to the Rodriguez home would be likely to result in endangering Edward or others.

## 2. Constitutional Claim

Lori's chief contention on appeal is that the trial court's order granting City's petition for disposition of firearms violates her Second Amendment right to keep and bear arms for home protection. She explains that "[d]epriving an owner of her own guns deprives her of the value of the property and means of exercising the core right of self-defense. [Citation.]" City urges that Lori's constitutional and community property rights may be lawfully impacted by a lawful restriction on her husband Edward's property interest in the confiscated firearms.

At the outset, we note that Lori does not challenge the trial court's order as violating Edward's Second Amendment rights. Constitutional challenges to the trial court's refusal under section 8102 to return confiscated firearms to a person who was detained due to his or her mental condition have been rejected. (See *Rupf v. Yan* (2000) 85 Cal.App.4th 411, 427-428; *People v. One Ruger .22-Caliber Pistol* (2000) 84 Cal.App.4th 310, 312.)

Lori's constitutional claim involves only her own Second Amendment right to keep and bear arms. For several reasons, we determine that Lori has not shown that her Second Amendment rights were violated by the trial court's September 30, 2013 order granting City's petition for disposition of firearms.

First, Lori acknowledges in her opening brief that the trial court's order does not bar her from acquiring new firearms, noting the trial court's "uncontradicted finding . . . that Lori cannot be prohibited from acquiring new firearms." Lori further acknowledges that under section 8101, she may not allow Edward access to any new firearms that she may acquire. Section 8101 provides: "(a) Any person who shall knowingly supply, sell,

12

give, or allow possession or control of a deadly weapon to any person described in Section 8100 or 8103 shall be punishable by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code, or in a county jail for a period of not exceeding one year, by a fine of not exceeding one thousand dollars ($1,000), or by both the fine and imprisonment.  [¶] (b) Any person who shall knowingly supply, sell, give, or allow possession or control of a firearm to any person described in Section 8100 or 8103 shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code for two, three, or four years."

Second, we understand Lori to argue that she has a Second Amendment right to return of the particular firearms that were confiscated under section 8102 for home protection.  However, Lori has not provided any legal authority for the proposition that the spouse of a person whose firearms were confiscated under section 8102 has a Second Amendment right to the return of those confiscated firearms for home protection.  In her briefing, she generally argues that the United States Supreme Court expanded Second Amendment rights in *District of Columbia v. Heller* (2008) 554 U.S. 570 (*Heller*) and *McDonald v. City of Chicago* (2010) 561 U.S. 742 (*McDonald*).

However, the Supreme Court decisions in *Heller* and *McDonald* did not state that the Second Amendment right to keep and bear arms extends to keeping and bearing either any particular firearms or firearms that have been confiscated from a mentally ill person.  Moreover, the *Heller* and *McDonald* decisions may be read to the contrary.

The *McDonald* court reiterated that "[i]n *Heller,* we held that the Second Amendment protects the right to possess a handgun in the home for the purpose of self-defense."  (*McDonald*, *supra*, 561 U.S. 742, 791.)  However, the court also stated:  "It is important to keep in mind that *Heller* while striking down a law that prohibited the possession of handguns in the home, recognized *that the right to keep and bear arms is not 'a right to keep and carry any weapon whatsoever in any manner whatsoever* and for whatever purpose.'  [Citation.]  We made it clear in *Heller* that our holding did not cast

13

doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill,' . . . . [Citation.]" (*McDonald*, *supra*, 561 U.S. at p. 786, italics added.)

Third, we note that the trial court's order does not actually require forfeiture or destruction of the confiscated firearms. Both the trial court and City's attorney suggested there were other viable options for disposition of the firearms, such as sale or storage outside the home.

Finally, we consider whether the provisions of Penal Code section 33850 et seq. impact Lori's Second Amendment claim. Lori has acknowledged that Penal Code section 33850 provides a procedure for the return of firearms in police custody to persons who claim ownership of the firearms.

Under Penal Code section 33850, a "person who claims title to any firearm" in law enforcement custody may seek the return of that firearm. (Pen. Code, § 33850, subd. (a).)[8] The person seeking return of any firearms must file an application for a Penal Code section 33865 notification that specifies the make and model of the firearms that are being sought and provides detailed information about any handguns. (Pen. Code, §§ 33850, 33865, subd. (c)(3).) The firearms cannot be returned by a court or law enforcement agency unless the person seeking them obtains a Penal Code section 33865 notification that the person is eligible to possess a firearm and "the firearm has been recorded in the Automated Firearms System in the name of the individual who seeks its return." (Pen. Code, § 33855, subd. (b).)

---

[8] Penal Code section 33850, subdivision (a) provides in part: "Any person who claims title to any firearm that is in the custody or control of a court or law enforcement agency and who wishes to have the firearm returned shall make application for a determination by the Department of Justice as to whether the applicant is eligible to possess a firearm."

14

After oral argument, we asked the parties to provide supplemental briefing with respect to the impact of Penal Code section 33850 et seq. on Lori's Second Amendment claim, by responding to the following questions: (1) "The record on appeal includes a copy of a May 8, 2013 Department of Justice Bureau of Fireams notice stating that Lori Rodriguez is 'eligible to both possess and purchase firearms as of the date the [personal firearms eligibility] check was completed.' What evidence in the record, if any, shows that Rodriguez either has or has not sought return of the confiscated firearms under the procedure provided by Penal Code section 33850 et seq?"; (2) "Assuming that Rodriguez has not sought return of the confiscated firearms under Penal Code section 33850 et seq., what is the impact on her claim that the trial court's order of September 30, 2013, violates her rights under the Second Amendment?"; and (3) "Assuming that Rodriguez has sought return of the confiscated firearms under Penal Code section 33850 et seq., what is the impact on her claim that the trial court's order of September 30, 2013, violates her rights under the Second Amendment?"

In their supplemental briefing, the parties agree that the record does not indicate that Lori has sought return of the confiscated firearms under the procedure provided by Penal Code section 33850 et seq. We understand Lori to contend that her failure to utilize the firearms return procedure provided by Penal Code section 33850 et seq. has no impact on her Second Amendment claim, for three reasons. First, Lori asserts that she properly sought return of the confiscated firearms by intervening in City's petition for disposition of firearms under section 8102. Second, Lori maintains that she may raise a constitutional claim without exhausting the administrative remedy provided by Penal Code section 33850 et seq. Finally, Lori appears to argue that the trial court proceedings on City's section 8102 petition precluded her from seeking return of the confiscated firearms under Penal Code section 33850.

City responds that whether or not Lori has sought return of the confiscated firearms under Penal Code section 33850 et seq. has no impact on her claim that the

15

trial court's September 30, 2013 order violates her Second Amendment rights. City notes that prior to amendment in 2013, section 8102 was silent as to Penal Code section 33850 et seq.,[9] and emphasizes its position that the trial court's order is constitutional because substantial evidence supports the trial court's finding that return of the confiscated firearms would likely endanger Edward and others.

The parties' supplemental briefing confirms that Lori has not sought return of the confiscated firearms under the procedure provided by Penal Code section 33850 et seq., although the firearms remain in the custody of law enforcement and Lori has obtained notification from the California Department of Justice Bureau of Firearms that she is eligible to both possess and purchase firearms. Lori has not provided any authority for the proposition that trial court proceedings on a section 8102 petition preclude a person who claims title to the confiscated firearms from seeking their return under Penal Code section 33850 et seq. Moreover, we believe that the record on appeal shows that the

---

[9] As amended in 2013, section 8102, subdivision (b) provides: "(1) Upon confiscation of any firearm or other deadly weapon from a person who has been detained or apprehended for examination of his or her mental condition, the peace officer or law enforcement agency shall issue a receipt describing the deadly weapon or any firearm and listing any serial number or other identification on the firearm and shall notify the person of the procedure for the return, sale, transfer, or destruction of any firearm or other deadly weapon which has been confiscated. A peace officer or law enforcement agency that provides the receipt and notification described in Section 33800 of the Penal Code satisfies the receipt and notice requirements. [¶] (2) If the person is released, the professional person in charge of the facility, or his or her designee, shall notify the person of the procedure for the return of any firearm or other deadly weapon which may have been confiscated. [¶] (3) Health facility personnel shall notify the confiscating law enforcement agency upon release of the detained person, and shall make a notation to the effect that the facility provided the required notice to the person regarding the procedure to obtain return of any confiscated firearm. [¶] (4) For purposes of this subdivision, the procedure for the return, sale, or transfer of confiscated firearms includes the procedures described in this section and the procedures described in Chapter 2 (commencing with Section 33850) of Division 11 of Title 4 of Part 6 of the Penal Code." (Stats. 2013, ch. 747, § 2.)

procedure provided by section 33850 et seq. for return of firearms in the possession of law enforcement remains available to Lori.

We therefore determine that Lori has failed to show that the trial court's September 30, 2013 order violates the Second Amendment by precluding her from keeping firearms for home protection. In the absence of any evidence that Lori's Second Amendment right to keep and bear arms was actually violated by the trial court's September 30, 2013 order granting City's petition for disposition of firearms under section 8102, we conclude that her Second Amendment claim lacks merit.

Having also determined that the order may be affirmed under section 8102 because the order is supported by substantial evidence that return of the confiscated firearms to the Rodriguez home would be likely to result in endangering Edward or others, we will affirm the order.

## IV. DISPOSITION

The September 30, 2013 order is affirmed.

_____
BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:


_____
MIHARA, J.


_____
GROVER, J.