Filed 1/6/16  P. v. Johnson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), pr/ohibits courts and parties from citing or relying on opinions not certified for ublication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TYRONE JOHNSON,<br><br>    Defendant and Appellant. | C074906<br><br>(Super. Ct. Nos. 10F01523,<br>12F04265) |

A jury convicted defendant Tyrone Johnson of passing a completed check with intent to defraud (Pen. Code, § 475, subd. (c); unless otherwise stated, statutory references that follow are to the Penal Code; count one), of being a felon in possession of a firearm (§ 29800, subd. (a)(1); count three), and possession of drug paraphernalia, a misdemeanor (Health & Saf. Code, § 11364; count four).  The jury acquitted defendant of possession of counterfeit bills with intent to defraud (count two).  Defendant admitted a strike prior (§§ 667, subds. (b)-(i), 1170.12).  The court found defendant in violation of probation in case No. 10F01523.

The court sentenced defendant to state prison for an aggregate term of seven years four months.

1

Defendant appeals. He contends (1) section 29800 violates the Second Amendment as applied to him and (2) the prosecutor committed prejudicial misconduct in closing argument. We affirm the judgment.

FACTS AND PROCEEDINGS

About 11:00 a.m. on June 20, 2012, defendant entered the Wells Fargo Bank in Citrus Heights, approached teller Michael Jimenez, and presented a check in the amount of $2,600 for deposit into defendant's business account. The check had been written on the account of Jacqueline and Jerry Skaggs at the First Northern Bank of Dixon. In filling out the deposit slip, Jimenez noted it was a large deposit for a new account (just opened a day or two before) and thought the check looked suspicious based on the printing on the check. Jimenez notified the branch manager, Jaime Caraveo, Jr. Caraveo called someone at First Northern Bank and they concluded it was a fraudulent check. Caraveo called the police.

About 11:25 a.m., Officer Janet Schaefer heard a radio dispatch for an incident at the bank and a description of the suspect. Officer Schaefer happened to be across the street from the bank. She saw a car with a person matching the description, defendant was the driver and no one else was in the car. Other officers arrived.

Defendant was on searchable probation. In a backpack found on the front passenger seat of the car, an officer found mail addressed to defendant in the large compartment of the backpack and an unloaded .25-caliber handgun in the smaller compartment. A records check on the gun did not reveal the owner. A search of the car produced a glass pipe used for smoking methamphetamine and a hypodermic needle and syringe. Defendant's wallet contained two $20 bills which felt like binder paper, had smudged ink, and were missing the security stripe. When asked about the bills, defendant admitted knowing the bills were fake and had planned to turn them in and make a police report but had forgotten. He explained he got the bills at a casino.

2

Defendant's son visited defendant while he was in custody for the current offenses. An audio recording of the visit was played for the jury. Defendant attempted to manipulate his son into claiming the gun as his.

Jacqueline Skaggs explained that the check defendant had tried to deposit bore her husband's name, their correct address, and correct account number, but the check was not one that her bank provided. Her bank-provided checks that had her name as well, and a different logo and color. She denied writing the check. Jerry Skaggs claimed he did not write the check either. Andrew Tambert had done some work in their kitchen but the work was not satisfactory so Mr. and Mrs. Skaggs stopped payment on a check they had given Tambert.

Jeremy Richardson became involved in a business venture called The Hobbie Shop with defendant and for three weeks, they tried to obtain bank loans for their business. A short time before June 20, 2012, a letter with a check addressed to The Hobbie Shop was delivered to the house belonging to defendant's mother. Richardson refused to deposit the check, explaining he did not trust the check. Defendant said he would deposit it. Richardson had looked through defendant's backpack for a pen and saw a gun which Richardson had previously seen in the possession of his uncle's roommate. Richardson testified that he and defendant both smoked methamphetamine but claimed the pipe in the car did not belong to him but instead assumed it belonged to defendant.

Defendant testified at trial. He admitted felony convictions in 2001, 2006, and 2011. Richardson was his partner who he had known for about a month as of June 2012. Defendant met Tambert through Richardson. Tambert showed defendant some work he had done and they discussed ways in which Tambert could expand his business.

On June 19, 2012, Richardson borrowed defendant's car. The backpack which belonged to defendant's son was in the car. When Richardson returned the car on June 20, 2012, he had locked the keys in the car. Defendant got the spare key from his

3

mother and opened the car, finding the backpack on the front seat. Defendant did not open it because he knew to whom it belonged. He also testified that sometimes he or his mother put his mail in the backpack. Defendant denied that the gun belonged to him. He claimed that he never touched or held it. He thought the gun belonged to his son. Defendant denied telling his son in the jail visit what to say about defendant's case.

Based on information from Richardson, defendant thought the check was legitimate and decided to deposit it even though he did not know what work generated the check and did not know Mr. and Mrs. Skaggs. When the bank told him the check was not legitimate, he asked for a copy of it so he could pursue the matter in small claims court. The bank kept the check.

Defendant claimed he received the $20 bills from the casino and only realized they were fake when he went to buy gas. He put them in his wallet and planned to file a police report. He denied that he intended to use them. He admitted using methamphetamine and that the smoking pipe might be his.

Tambert did some kitchen work for Mr. and Mrs. Skaggs in June 2012. He fixed the problems with some of the materials and reduced his price. The check he deposited from them did not clear. Tambert believed that Richardson was planning to do some electrical work for them. Tambert admitted a long criminal record. Tambert knew defendant as well.

A business banker at Wells Fargo claimed defendant presented the check to him for deposit. The business banker did not recall a teller being involved. Defendant acted normal, confident, and very upbeat.

DISCUSSION

I

*The Second Amendment Right to Bear Arms*

Citing *District of Columbia v. Heller* (2008) 554 U.S. 570 [171 L.Ed.2d 637] (*Heller*) and subsequent cases, defendant contends that section 29800 violates the Second Amendment as applied to him.

Section 29800, subdivision (a)(1) provides:  "Any person who has been convicted of a felony under the laws of the United States, the State of California, or any other state, government, or country, or of an offense enumerated in subdivision (a), (b), or (d) of Section 23515, or who is addicted to the use of any narcotic drug, and who owns, purchases, receives, or has in possession or under custody or control any firearm is guilty of a felony."

It is undisputed that defendant did not raise this constitutional challenge in the trial court.  As the Attorney General point out, defendant's challenge is to the statute *as applied to him*, and does not merely present a pure issue of law.  This distinguishes defendant's case from *City of San Diego v. Boggess* (2013) 216 Cal.App.4th 1494, on which defendant relies to argue he has not forfeited his claim.  (See *id.* at p. 1503 [discussing contention that statute is *facially* unconstitutional].)  Here, defendant describes his challenge as an "as applied" challenge and argues not only the law, but also its application to his specific circumstances.  He adds a lengthy discussion of various statistics that were not presented to the trial court, alleging disproportionate impact as part of his claimed constitutional violation.  His challenge is forfeited, and we decline to consider it further.

## II

### *Prosecutorial Misconduct*

Defendant contends the prosecutor committed prejudicial misconduct in closing rebuttal argument to the jury.

During closing argument, defense counsel stated:

"Now the People in this case, the prosecution, have the burden of proving every element of every charge beyond a reasonable doubt.  And with each and every one of these charges there are huge problems as to certain elements which are not proven.  And so what is happening is they're just putting a whole smattering of charges in front of you and kind of hoping they prove each other.  So it's, basically, bootstrapping the charges to one another and hoping you just don't like [defendant].  And that's not evidence."

In rebuttal, the prosecutor argued:

"I'm going to ask that you consider all of the evidence.  You can listen to the jail recording again if you need to.  I think that the evidence -- I'll give one more example I wrote down.  [Defense counsel], in the beginning of her argument, talked about how I just wanted you to just bootstrap the charges together.  That's not true.  That's frustrating, when I go through individually all the evidence as to each count.

"But what I do remind you of, and what she's referring to is that you can actually consider all of the evidence and the circumstances.

"I have prosecuted D.U.I. cases.  And I'm going to talk about an unrelated type of case.  In a D.U.I. case the officer will testify to different signs and symptoms, objective signs of impairment that can help determine if somebody is under the influence.  And let's say you have a person in the D.U.I. case who has a high blood-alcohol -- their eyes are red and watery; their speech is slurred; they're not able to mentally follow the questions, and what the defense will do in a case like that is they'll pick apart each thing.

6

"They'll say, well, red watery eyes, that could be from allergies, right, that could just be due to allergies. And the officer will say, yeah, I guess that's true.

"And slurred speech, you don't know that he didn't have a speech impediment. You haven't talked to him before. Well, I guess that's true. And you didn't personally calibrate the machine.

"*And what they do is they try to pick apart each individual piece. And it's kind of reasonable on its own to pick apart each individual piece, but when you look at --* (Italics added.)

"[Defense counsel]: Your Honor, at this point I'm going to object. The Prosecutor is lowering the standard of proof as to the elements in the current case.

"[Prosecutor]: It's an argument to consider all the evidence together. That's not improper.

"[The Court]: You're talking about the totality of the circumstances.

"[Prosecutor]: Yes.

"[The Court]: All right. Say that and move on.

"[Prosecutor]: Okay. You don't look at the circumstances one at a time. You get to look at all the evidence together. So here, even though they're separate charges to be decided separately, *you get to take into account the fact that the Defendant has counterfeit bills when you're considering the check charge. You get to do that because, obviously, that's what we would do in everyday life,* and that is what, as a fact finder, you get to do here, consider all of the circumstances. (Italics added.)

"I'm confident that when you do that and you consider all the circumstances that you'll find the Defendant guilty of these charges."

Citing the above-italicized language in the prosecutor's rebuttal argument, defendant contends the prosecutor committed prejudicial misconduct by introducing facts not in evidence and in misstating the reasonable doubt standard. We reject this contention.

7

" 'The applicable federal and state standards regarding prosecutorial misconduct are well established. " 'A prosecutor's . . . intemperate behavior violates the federal Constitution when it comprises a pattern of conduct "so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process." ' " [Citations.] Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves " ' "the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury." ' " [Citation.] As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion -- and on the same ground -- the defendant [requested] an assignment of misconduct and [also] requested that the jury be admonished to disregard the impropriety. [Citation.] Additionally, when the claim focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion.' [Citation.]" (*People v. Ochoa* (1998) 19 Cal.4th 353, 427; see also *People v. Carter* (2005) 36 Cal.4th 1114, 1204.)

In complaining on appeal that the prosecutor introduced facts not in evidence, defendant refers to the prosecutor's reference to a DUI case and the objective signs and symptoms of impairment. At trial, defense counsel did not object on this ground. This part of defendant's contention is forfeited on appeal for failure to object on this ground below.

With respect to the burden of proof, defense counsel objected and the trial court clarified with the prosecutor what he meant. Defense counsel did not request an admonition. The claim is forfeited. Even so, on the merits defendant's claim fails. The prosecutor's argument was to consider all the circumstances. Defendant admitted he had fake bills but claimed he did not intend to use them. The jury convicted defendant of the check charge but acquitted defendant of the fake bill charge. The jury concluded that the element of intent to pass the fake bills, the only element at issue, had not been proven.

8

There is no reasonable likelihood that the jury construed the complained-of remark in an objectionable fashion.  There was no misconduct.

DISPOSITION

The judgment is affirmed.


                                             HULL           , Acting P. J.


We concur:



      ROBIE           , J.



      DUARTE         , J.


9