Filed 9/23/16  P. v. Meyers CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>MATTHEW CHRISTOPHER MEYERS,<br><br>　　　　Defendant and Appellant. | A144234<br><br>(Contra Costa  County<br>Super. Ct. No. 05-130875-8) |

　　　　A jury convicted Matthew Christopher Meyers of one count of possessing a firearm in violation of Welfare and Institutions Code[1] section 8103, subdivision (f)(1), which prohibits persons who have been admitted to a mental health facility under section 5150 from possessing firearms for five years after release from the facility.  The trial court suspended imposition of sentence, and placed appellant on three years formal probation, subject to various conditions, including that he participate in a treatment program.  Appellant's court-appointed counsel has filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*), in which he raises no issue for appeal and asks this court for an independent review of the record.  (See also *People v. Kelly* (2006) 40 Cal.4th 106, 124.)  Counsel attests that defendant was advised of his right to file a supplemental brief in a timely manner, but defendant has not exercised such right.

---

[1]　　　All further undesignated statutory references are to the Welfare and Institutions Code.

We have examined the entire record in accordance with *Wende*. For reasons set forth below, we agree with counsel that no arguable issue exists on appeal. Accordingly, we affirm.

## BACKGROUND

On September 15, 2012, Officer Peter Piersig, of the Napa Police Department, responded to a family disturbance call placed by appellant's mother. When he arrived at the scene, Officer Piersig saw appellant in the driver's seat of a parked truck in the driveway of the residence. In the course of speaking with Officer Piersig, appellant indicated that he had three handguns in the truck, as well as a stun gun in a pocket of his pants. Additional officers arrived at the scene, who waited outside with appellant. Officer Piersig went inside to talk with appellant's mother, as well as two other people who were inside the house. Appellant's mother and the other two individuals told Officer Piersig they were very concerned about appellant's behavior. They were very concerned about his safety and the safety of other people. Appellant believed that people were following him and he talked about killing them. Officer Piersig then went back outside to talk to appellant. Appellant denied that he had any mental health issues. He refused to go voluntarily to the mental health facility with Officer Piersig. Suspecting that appellant posed a danger to himself and to others, Officer Piersig placed appellant on a section 5150 hold and drove him to a mental health facility in Napa.

On September 15, 2012, Ann Finlayson, a registered nurse at Napa County Mental Health, assessed appellant and determined that "he needed to be hospitalized on a 72-hour hold for danger to others" pursuant to section 5150. She completed a 5150 form documenting her findings; appellant was admitted to the Center for Behavioral Health ("CBH") in Vallejo, a designated facility for 5150 holds.

On September 18, 2012, on the recommendation of CBH psychiatrist Dr. Kamaljeet Boora, appellant's 72-hour hold was extended for up to an additional 14 days per section 5250. Two registered nurses at CBH, Laurie John Mackenzie and Mohammed Merbaa, each testified that it was regular practice to advise any person being discharged from a 5150 or 5250 hold that the person is not allowed to possess firearms

2

for five years.  Both nurses identified a form signed by appellant on September 19, 2012, advising him of the five-year firearm prohibition.  The form indicated that Nurse Merbaa personally informed appellant of the firearm prohibition, and he recognized his own signature on the form.  Although Nurse Merbaa did not independently recall giving appellant the advisement or going over the form with him, he explained that he always followed the discharge policy, which required him to give the firearm prohibition advisement.

On September 27, 2012, Sergeant Scott Cook of the San Pablo Police Department ran a records check and determined that there were nine firearms registered to appellant.  On the afternoon of October 4, 2012, officers pulled appellant over a few blocks from his home in San Pablo.  Sergeant Cook questioned appellant at the site of the traffic stop, and appellant told him that there were five firearms inside the safe in his home.  Appellant gave Sergeant Cook the combination to his safe, and Sergeant Cook gave that information to Detective Shawn Ray.  Detective Ray entered the house and found firearms in the bedroom and boxes containing hundreds of bullets just outside the bedroom.  Inside the safe, Detective Ray found two handguns and a flare gun.  Detective Ray also found two handguns near the bed.

Thereafter, appellant was booked at the San Pablo Police Department.  During the booking process, before detectives interviewed appellant, appellant asked Officer Matthew Brown: "Is this about the guns I was supposed to turn in because I was 5150?"

When Detective Ray subsequently interviewed appellant, he confirmed that he lived at the house where the guns and ammunition were found. Appellant, however, denied knowing that he was not allowed to own or possess the firearms and stated that he did not recall being advised of any firearm prohibition upon discharge from his recent mental health hold.  After the interview, officers conducted a follow-up search of appellant's home and found discharge papers signed by appellant containing a firearm prohibition.  On one of the forms, dated September 19, 2012, a box was checked indicating that appellant intended to petition for return of his firearms.

3

After both parties rested, the trial court heard argument regarding jury instructions. Over defense counsel's objection, the trial court refused to instruct the jury on a non-statutory element of the charged offense that would have required the jury find that appellant knew he was prohibited from possessing firearms.

## DISCUSSION

During trial, the jury was properly instructed on the elements of the charged offense, the state's burden of proof beyond a reasonable doubt, the corpus delicti rule, and the proper way to approach their duties and the evidence. Although the trial court refused appellant's request to insert a knowledge element, this could not have misled the jury as nothing in the plain language of section 8103, subdivision (f) required a finding about whether appellant *knew* he was prohibited from possessing firearms.[2] In any event, the evidence at trial established that appellant did, in fact, know that he was prohibited from possessing firearms.

The trial court properly exercised its discretion in sentencing appellant, and imposing the conditions of probation. It correctly ordered the destruction of the seized firearms and ammunition in that there was substantial evidence that return of the firearms to appellant would likely result in endangering appellant or other persons. (*City of San Diego v. Boggess* (2013) 216 Cal.App.4th 1494, 1501.)

At all times appellant was represented by competent counsel. Accordingly, we conclude that no arguable issues exist.

## DISPOSITION

The judgment is affirmed.

---

[2]     Section 8103, subdivision (f)(1) provides: "No person who has been (A) taken into custody as provided in Section 5150 because that person is a danger to himself, herself, or to others, (B) assessed within the meaning of Section 5151, and (C) admitted to a designated facility within the meaning of Sections 5151 and 5152 because that person is a danger to himself, herself, or others, shall own, possess, control, receive, or purchase, or attempt to own, possess, control, receive, or purchase any firearm for a period of five years after the person is released from the facility."

 

                           _____\
                           REARDON, ACTING P. J.

We concur:

_____\
RIVERA, J.

_____\
STREETER, J.