PERREN, J., Dissenting.
I respectfully dissent.
Chief Justice Gibson's "judicial seed" will not blossom in this fallow field.
Freedom from unreasonable government intrusion is at the core of the Fourth Amendment, which "draws 'a firm line at *74 the entrance to the house.' " ( Kyllo v. United States (2001) 533 U.S. 27, 31, 40, 121 S.Ct. 2038, 150 L.Ed.2d 94.) " '[P]hysical entry of the home is the chief evil against which ... the Fourth Amendment is directed.' [Citation.] And a principal protection against *624 unnecessary intrusions into private dwellings is the warrant requirement imposed by the Fourth Amendment." ( Welsh v. Wisconsin (1984) 466 U.S. 740, 748, 104 S.Ct. 2091, 80 L.Ed.2d 732.) "[S]earches and seizures inside a home without a warrant are presumptively unreasonable." ( Payton v. New York (1980) 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639.)
Relying on a "community caretaking" theory, the majority approves a warrantless intrusion into a home based solely upon police speculation about what they "could" find inside. The officers admittedly had no information that anyone, child or adult, was inside the house and required help. Indeed, everyone reported to be in the house was outside and completely under the officers' control, including the person they came to rescue, appellant Ovieda. The officers did not believe that appellant was a danger to himself or others. Because the officers had no objectively reasonable belief that searching the home was imperative, I conclude that the trial court should have granted appellant's motion to suppress evidence seized during the search.
The facts of this case are undisputed. A caller informed police that appellant was at home and suicidal, but had been disarmed by two friends who were with him. Officers surrounded the home. At their request, and accompanied by his friends, appellant voluntarily came outside, was frisked and promptly handcuffed. He was unarmed. He denied suicidal thoughts or having guns. The officers were told that one of the friends had moved guns into the garage. Although the officers had no reason to believe that anyone was in the house, two of them entered the home with guns drawn to conduct, in their words, a "protective sweep to secure the premises." Inside, they found illegal weapons and a cannabis oil lab.[1]
On these facts, the search was unreasonable under any theory, whether it be "community caretaking," "emergency aid" or "exigent circumstances." At the time of the search, the situation was stabilized, appellant was restrained, and everyone reported to have been in the house was outside and unharmed. The officers had no information that anyone was in the house nor did they suspect that a crime had been committed. Therefore, the police could not lawfully enter and search the premises absent consent or a search warrant.
Supreme Court cases authorizing police entry into a house without a warrant in an emergency are circumscribed by their facts. As I explain below, this case does not resemble the type of emergency or exigency that would justify a warrantless entry.
*625 First , an emergency justifying the entry and search of a home may arise when objective evidence leads police to believe that they must render immediate aid because a person inside is injured or in distress.
In a factually distinguishable case relied upon by the majority, People v. Roberts (1956) 47 Cal.2d 374, 376, 378, 303 P.2d 721, police entered the home of someone reported to be "sickly" when they "heard several moans or groans that sounded as if a person in the apartment were in distress." The warrantless entry "was lawful for the purpose of rendering aid." ( *75 Id. at p. 380, 303 P.2d 721.) A report that a person is injured and bleeding, coupled with blood stains outside the home and a neighbor's confirmation that an injured person is within, justify police kicking in the door to help the person. ( Tamborino v. Superior Court (1986) 41 Cal.3d 919, 921-922, 924-925, 226 Cal.Rptr. 868, 719 P.2d 242.)
The emergency aid theory applies when the police see shooting victims outside of a house, and believe that injured persons inside the house require immediate intervention. In People v. Troyer (2011) 51 Cal.4th 599, 607-609, 612, 120 Cal.Rptr.3d 770, 246 P.3d 901, police responding to a report of shots fired found badly injured people on the porch of a home and blood on the front door, a clear emergency that justified immediate entry into the home to look for additional victims or a suspect. The court recognized the right of the police to enter without a warrant, given their objectively reasonable belief that an occupant was seriously injured. After a shooting victim was brought to a hospital, as described in People v. Hill (1974) 12 Cal.3d 731, 754-755, 117 Cal.Rptr. 393, 528 P.2d 1, officers found fresh bloodstains on the porch, fence and auto outside a house and saw blood on the floor inside the house, an exigency justifying an entry to locate wounded persons, because waiting for a warrant could have resulted in the loss of life.
Here there was no such evidence. At the time of this search, no one was in appellant's house moaning and groaning, no gunshots were reported, and no bloodstains were seen. Instead, appellant was outside of his house, unarmed and unharmed. There was no justification for the officers to enter appellant's house to render aid.
Second , an emergency may arise if police believe that a crime is in progress in a house. In People v. Ray (1999) 21 Cal.4th 464, 88 Cal.Rptr.2d 1, 981 P.2d 928, police responded to a report that Ray's front door was open and the inside was in shambles. On arrival, officers found the scene as described; believing that a burglary was in progress or just took place, they entered to look for possible victims. Using a "community caretaking" theory, the state Supreme Court emphasized that police authority to enter is narrowly *626 limited by the need to ascertain whether someone in the house is in need of assistance and to provide that assistance. ( Id. at p. 477, 88 Cal.Rptr.2d 1, 981 P.2d 928.) No such facts were present in this matter.
In Brigham City v. Stuart (2006) 547 U.S. 398, 406, 126 S.Ct. 1943, 164 L.Ed.2d 650, the U.S. Supreme Court allowed a warrantless entry when police saw a violent fracas inside a house; officers could enter to rescue a bleeding occupant and stop the violence. In Michigan v. Fisher (2009) 558 U.S. 45, 130 S.Ct. 546, 175 L.Ed.2d 410, police responding to reports of a domestic dispute saw the defendant inside his house with a cut on his hand, screaming and throwing things, and blood on his front door and his car; in the Court's view, the police had an objectively reasonable belief that the defendant might be harming a child or spouse, or would hurt himself in his rage. This danger justified an immediate entry without a warrant and did not bar use of evidence obtained during the entry. ( Id. at pp. 48-49, 130 S.Ct. 546.)
Here, the police did not see a crime or altercation unfolding inside the house before entering, nor did they believe that a crime had just taken place. Instead, they telephoned appellant inside the house and asked him to walk outside. He complied. Afterward, they searched the house. No immediate warrantless entry was justified once appellant was outside.
*76 Third , the police may enter a house in an emergency to detain a suicidal person inside the house for a mental evaluation. The key to cases involving a potential suicide at a home is a pressing need for police to act but no time for them to secure a warrant . For example, in Sutterfield v. City of Milwaukee (7th Cir. 2014) 751 F.3d 542, police entered a home to detain a woman for a mental evaluation after she remarked to her psychiatrist, " 'I guess I'll go home and blow my brains out.' " ( Id. at p. 545.) The court concluded that the officers had to act expeditiously by forcing entry during the unfolding crisis. ( Id. at p. 566.)
In Fitzgerald v. Santoro (7th Cir. 2013) 707 F.3d 725, 728-729, officers forced a warrantless entry into the home of an apparently suicidal person to seize her for a mental evaluation. The entry was deemed justified based on exigent circumstances, because the officers objectively and reasonably believed when they entered the home that the occupant was in need of immediate assistance. ( Id . at pp. 731-732.) A person with a gun who is threatening suicide may be frisked in the doorway of his home, to preserve the safety of everyone present. ( United States v. Wallace (5th Cir. 1989) 889 F.2d 580, 582, citing Terry v. Ohio (1968) 392 U.S. 1, 23, 88 S.Ct. 1868, 20 L.Ed.2d 889.)
Here, the officers-who had no reason to believe that an injured, endangered or suicidal person was in the house-entered to conduct a "protective *627 sweep."[2] The People's post-search rationale of "community caretaking" is entirely unsupported by this record. Appellant was standing on the sidewalk in handcuffs. The others known to be in the house were also outside. The emergency was over: the police were not justified in their search of appellant's home-whether cursory or detailed-without his consent or a search warrant. (See State v. Hyde (N.D. 2017) 899 N.W.2d 671, 677 [police alerted to a possibly suicidal person by his relatives could not enter his house without a warrant because they lacked a reasonable basis to believe there was an ongoing emergency or immediate need to protect his life].)
Had police believed that appellant was a danger to himself or others they would have been justified to take him into custody. ( Welf. & Inst. Code, §§ 5150 et seq. [police may take into custody someone who is gravely disabled or a danger to himself or others, for an assessment, evaluation and crisis intervention].) State law provides a detailed mechanism for seizing weapons if the police believed that someone is "5150." The police may confiscate weapons belonging to persons detained for a mental health evaluation. ( Welf. & Inst. Code, § 8102 ; City of San Diego v. Boggess (2013) 216 Cal.App.4th 1494, 1500, 157 Cal.Rptr.3d 644 [" Section 8102 authorizes the seizure and possible forfeiture of weapons belonging to persons detained for examination under section 5150 because of their mental condition"].) A detention to evaluate a person's mental condition permits the issuance of a search warrant to seize firearms. ( Pen. Code, § 1524, subd. (a)(10).)
The police did not invoke these justifications to search appellant's home or seize his guns. The majority infers that the officers believed appellant to be a danger to himself. (Maj. opn. ante, at p. 73.) Tellingly, however, neither the prosecutor nor the Attorney General argued that the police detained appellant because they felt he was a danger to himself or others and intended to transport him to a mental health facility pursuant to the Welfare and Institutions Code. The inference drawn by *77 the majority is not supported by the record or by arguments offered in the trial court or on appeal.
Mere possession of guns is not a valid reason to search a home, unless the police determine that the gun owner must be detained for a mental health evaluation. Citizens may possess guns in their homes. ( District of Columbia v. Heller (2008) 554 U.S. 570, 635, 128 S.Ct. 2783, 171 L.Ed.2d 637.) The Attorney General argues that officers entered the home to merely "secure" appellant's guns, although it is not clear how they could achieve that without "seizing" the guns. The trial court "found it credible that they wanted to *628 remove firearms." But the officers did not believe that appellant posed a danger to himself or others; it follows that their seizure of his guns was unauthorized.
The majority adopts the Attorney General's reasoning, asking rhetorically, "Surely a police officer may enter a residence to protect a suicidal person and secure the premises if firearms are believed to be present." (Maj. opn. ante, at p. 71.) The answer is "Yes" if the armed person is inside the residence and the police must enter to take the person into custody for a mental health evaluation. This strawman analysis fails, however, because appellant was outside of his house and not believed to be a danger to himself or others.
The sole justification offered by police for the entry was to check for people who might be present or injured. But everyone reported to be in the house was outside and accounted for. While officers could have sought appellant's permission to enter, they did not. While they could have detained appellant for evaluation at a mental health facility and sought a search warrant to seize his weapons, they did not. ( Pen. Code, § 1524, subd. (a)(10).) Nonetheless, they entered to search. Based on the facts known to them at the time, they could not.
Under an objective standard of reasonableness, the police could not lawfully search appellant's home. At the time of the search, appellant was standing outside the house in handcuffs, being interviewed by the police. The exigency that brought the police to appellant's home-his threatened suicide-was fully controlled before the search took place.
There is no showing that anyone was in imminent danger in the house so as justify an immediate, warrantless entry. The police had no information that an injured spouse or hidden child required aid. The occupants came outside before the search, in direct response to the police request that they do so. Officer Garcia testified that "we didn't have any specific information at the time that ... there was someone in there." Officer Corbett's testimony that "there could be a child" or "there could be somebody injured" was pure speculation. Police action cannot be justified by what they did not know, or on a hunch or unparticularized suspicion. ( Terry v. Ohio , supra , 392 U.S. at p. 27, 88 S.Ct. 1868 ; People v. Block (1971) 6 Cal.3d 239, 244, 103 Cal.Rptr. 281, 499 P.2d 961.)
The totality of the circumstances in the present matter did not present an emergency justifying a warrantless entry. The officers were not faced with a tense, uncertain or evolving situation at the time of the search. No gunshots were reported before their arrival. They knew that appellant had been armed with a gun and were entitled to handcuff and frisk him when he walked *629 outside and approached them, to preserve their safety and that of third parties. At that point, the need for the police to render emergency aid ceased.
Theories of "community caretaking," "emergency aid," or "exigent circumstances,"
*78 are inapposite on this record. The police had no information that anyone was in the home let alone someone who needed immediate assistance or protection, no weapons were accessible to the handcuffed Ovieda, and no crime was committed or in progress. Any emergency that might mandate swift action-without a search warrant to prevent imminent danger to life-ended when appellant voluntarily came out of the house, along with the friends who were assisting him.
The majority speculates that the police entered appellant's home to seize his guns and save his life, because he might have shot himself once they left. The officers did not articulate any such fear for appellant's safety during the suppression hearing.
I do not question the officers' motives, honesty or sincerity. Their conduct, however, is circumscribed. In this situation, where a crisis has been averted, the officers have options: (1) they can seek consent to search; (2) they can seek a search warrant if the person's mental health is so deteriorated that he presents a danger to himself or others; or (3) they can wait to see how or if the situation evolves. If the person's ensuing conduct causes concern for his safety or the safety of others, they could seek a search warrant. The burden is on the State to demonstrate justification for the search. It has failed to do so.
The theme of the majority is that the police had to act. The officers' collective lack of information that anyone was in jeopardy, that anyone was upon the premises or that anyone was injured or in peril belies the state's theory. Ignorance of a fact, without more, does not raise a suspicion of its existence. The protection afforded by the Constitution would be sorely compromised if what is not known or reasonably suspected would suffice for probable cause. I conclude the police could not lawfully enter and search the premises absent consent or a search warrant. The search was unlawful under both the State and Federal Constitutions. Appellant's motion to suppress evidence should have been granted. ( Pen. Code, § 1538.5.)

The majority's statement of facts focuses on what the officers found. The officers should not have been inside of appellant's house in the first place.

An inapt theory that the People abandoned on appeal.