Filed 1/15/21  Ahn v. Sanger CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| LEAH AHN,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>PRIYA SANGER et al.,<br><br>    Defendants and Appellants. | A157260, A157935<br><br>(San Francisco County<br>Super. Ct. No. CGC-14-541815) |

Priya and Michael Sanger (the Sangers) and Leah Ahn own as tenants in common a multi-unit residential building in San Francisco, and their rights and responsibilities are set forth in a contract called the Tenancy In Common Agreement (TICA).[1]  After Ahn failed to pay her portion of mortgage payments under the TICA, arbitration proceedings were initiated (the first arbitration), and an award was entered in favor of the Sangers.  The Sangers successfully petitioned the trial court to confirm the award, and Ahn did not appeal from the resulting judgment.  The Sangers, however, appealed from an order denying their request for the attorney's fees and costs they incurred in petitioning to confirm the award, and we ruled in their favor.  (*Sanger v. Ahn* (Jun. 28, 2016, A145714) [nonpub. opn.].)

---

[1] The property has another co-owner who is not a party to this litigation.

1

The trial court's confirmation of the award in the first arbitration did not end the parties' disputes. Ahn subsequently initiated this case by suing the Sangers and others. The trial court compelled another arbitration (the second arbitration), and the Sangers again prevailed. Among other findings, the arbitrator determined that Ahn violated the TICA by conveying a deed of trust to her mother without the approval of Ahn's co-tenants. The arbitrator granted the Sangers two types of relief. One provided a substantive remedy, and the other awarded the attorney's fees and costs the Sangers incurred in the second arbitration (the fees award). Regarding the substantive remedy, the arbitrator initially ordered Ahn to remove the lien created by the wrongfully conveyed deed of trust. After she failed to do so, the arbitrator ordered as alternative relief a reallocation of the parties' obligations under the joint mortgage in an amount reflecting the fees award (the reallocation remedy).

The Sangers petitioned the trial court to confirm the arbitrator's final award. Although the court confirmed the fees award, it rejected the reallocation remedy, concluding that it exceeded the arbitrator's authority. Accordingly, it entered an order correcting the arbitration award "by eliminating the portion of that award that provides for reallocation of the mortgage debt" and confirmed the award as corrected.

Both sides appealed, with Ahn contending that the trial court erred by compelling arbitration and should have vacated the final award in full, and the Sangers contending that the court improperly rejected the reallocation remedy. We reject Ahn's claims and agree with the Sangers' claim.[2]

---

[2] Because we rule against Ahn on the merits, we necessarily reject her claim that the trial court improperly awarded the Sangers the attorney's fees and costs they incurred after the entry of the final arbitration award.

Accordingly, we reverse the trial court's order confirming the award as corrected and direct it to enter a new order confirming the award as issued by the arbitrator.

## I.
### FACTUAL AND PROCEDURAL BACKGROUND

The parties have engaged in protracted and torturous litigation, and the arbitrator in the second arbitration characterized it—in our view fittingly—as a "black hole of expense and rancor." We describe only the parts of this history that are material to our decision.

The first arbitration award was confirmed in 2012 in a different case. Two years later, Ahn brought this case. In addition to the Sangers, Ahn sued two entities that were not parties to the TICA: Old Republic Title Company (Old Republic) and First Republic Bank (First Republic). The Sangers successfully petitioned the trial court to compel the second arbitration. The arbitration involved several claims by Ahn, as well as a counterclaim by the Sangers that Ahn violated the TICA by conveying a deed of trust to her mother.

The second arbitration resulted in a series of rulings. In a 58-page interim ruling entered in March 2018, the arbitrator found in favor of the Sangers on the vast majority of Ahn's claims. On the claim brought by the Sangers, the arbitrator found that Ahn had violated the TICA by conveying the deed of trust to her mother. To remedy the violation, the arbitrator ordered Ahn "to remove the lien within three months," and he retained jurisdiction to consider alternative relief in the event she failed to comply.

Ahn indeed failed to comply, and at the end of August 2018 the arbitrator issued another order. In it, he entered the fees award in the amount of $304,894.45, and he proposed, as an alternative to his earlier

3

ruling requiring Ahn to remove the lien, that Ahn be evicted. Although he was concerned such an eviction would be "somewhat draconian," he noted the TICA specifically authorized eviction as a remedy.

Shortly after the August 2018 order, the Sangers discovered and informed the arbitrator that Ahn's mother had recorded a notice of default against the property based on her deed of trust. Learning about the "notice of default frankly . . . altered [the arbitrator's] judgment" about the appropriate remedy, and in his final arbitration award he decided not to order Ahn's eviction. Instead, the arbitrator fashioned the reallocation remedy, granting the Sangers' request for the mortgage "as between the Sangers and Ms. Ahn [to] be reallocated in the amount of the award of fees and costs in this arbitration, $304,894.45."[3]

The Sangers petitioned the trial court to confirm the arbitrator's final award. Ahn opposed, arguing that the TICA's arbitration provision did not bind her. Although the court did not accept this argument, it rejected the reallocation remedy on separate grounds, and it corrected the award "by eliminating the portion of that award that makes the $304,894.45 awarded to the Sangers an obligation of [Ahn's] on the . . . mortgage and reallocates the parties' shares of that mortgage debt." The court also awarded the Sangers an additional $28,696.85 for the attorney's fees and costs they incurred in bringing the petition to confirm the arbitration award.

The judgment was entered in April 2019, and the parties' post-judgment motions challenging it were denied. In No. A157260, Ahn appealed to challenge the rulings compelling arbitration, confirming the fees award,

---

[3] The arbitrator declined the Sangers' request to include in the reallocation remedy the amount of attorney's fees and costs awarded to the Sangers in the first arbitration proceeding, concluding that his "power and the remedy ordered should derive from the matter before [him]."

4

and awarding the Sangers their attorney's fees and costs in bringing their petition to confirm the arbitration award. In No. A157935, the Sangers appealed to challenge the ruling rejecting the reallocation remedy. We consolidated the two appeals.

II.

DISCUSSION

A.    *Ahn's Challenges to the Trial Court's Order Compelling Arbitration Fail.*

Ahn claims that the trial court erred by compelling the second arbitration because (1) the arbitration provision was not sufficiently incorporated by the "first amendment" to the TICA; (2) the provision was not enforceable against her because of fraud in the execution; and (3) the court abused its discretion under Code of Civil Procedure[4] section 1281.2, which authorizes the denial of a petition to compel arbitration under certain circumstances. We are not persuaded by any of these arguments.

1.    Additional background

Ahn was not one of the original co-tenants who agreed to the TICA, but she became a co-tenant in 2005 when she bought her interest from one of the original ones. At that time, she and her co-tenants signed a document called the "first amendment" to the TICA, which expressly stated that "Ahn has read and fully understands all of the terms and conditions of the [TICA] and agree[s] to abide by each and every one of them." The TICA contains an arbitration provision.

In opposing the Sangers' motion to compel the second arbitration, Ahn denied that she had read and understood the TICA's provisions, directly contradicting the assertion she made in the first amendment. She argued

---

[4] All statutory references are to the Code of Civil Procedure.

5

that she should not be bound by the arbitration provision because she did not sign the TICA itself, which was not properly incorporated into the first amendment. Ahn also claimed that the arbitration provision was "void for constructive fraud in its execution" because her real estate agent never gave her a copy of the TICA and told her the first amendment was "just a formality." In reply, the Sangers contended that Ahn's claims not to be bound by the arbitration provision were barred by res judicata, because the provision's validity "was necessarily decided" in the first arbitration.

The trial court ultimately compelled the arbitration of Ahn's claims against the Sangers, and it stayed the litigation of her claims against Old Republic and First Republic, the defendants that were not parties to the TICA. In so ruling, the court did not explicitly address Ahn's claims not to be bound by the arbitration provision.[5] Nor did it address the Sangers' argument about the preclusive effect of the first arbitration.

After the Sangers prevailed in the arbitration and sought to have the trial court confirm the arbitrator's award, Ahn argued that the "award should be vacated because no valid arbitration agreement exists." (Emphasis omitted.) Specifically, she reiterated her arguments that the arbitration provision was not enforceable because it was not incorporated into the first

_____

[5] Ahn did not petition for a writ of mandate to review the order compelling arbitration. An order compelling arbitration, although not itself appealable, can be reviewed on appeal from the judgment confirming the arbitration award. (*Handy v. First Interstate Bank* (1993) 13 Cal.App.4th 917, 922.) Still, "[w]rit review is the appropriate way to review" an order compelling arbitration when the claim, as Ahn's claim here, is that there is no "valid, enforceable arbitration agreement." (*Medeiros v. Superior Court* (2007) 146 Cal.App.4th 1008, 1014, fn. 7.) Such review is preferred because if the writ is successful it "avoid[s] having parties try a case in a forum where they do not belong, only to have to do it all over again in the appropriate forum." (*Ibid.*)

6

amendment and was void because of fraud in the execution. A different judge than the judge who granted the petition to compel arbitration ruled on the petition to confirm the arbitrator's award. The second judge declined to address the merits of Ahn's challenges to the provision's enforceability, concluding that (1) Ahn was barred from raising them because of the preclusive effect of the first arbitration and (2) he could not reconsider the first judge's order compelling arbitration.[6]

### 2. Analysis

When reviewing a trial court's order compelling arbitration, our standard of review depends on the basis of the ruling. If the ruling is based on a decision of fact, we employ the substantial-evidence standard. If the ruling rests on a legal interpretation, our review is de novo. (*Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1425.) And if the ruling implicates a choice of whether to stay or deny arbitration under section 1281.2, as did the order below, we review it for an abuse of discretion. (*Laswell v. AG Seal Beach, LLC* (2010) 189 Cal.App.4th 1399, 1406.) Under this standard, we consider whether the ruling " 'falls outside the bounds of reason' under the applicable law and the relevant facts." (*Roth v. Plikaytis* (2017) 15 Cal.App.5th 283, 290.)

Initially, we reject Ahn's claim that "the trial court . . . erred by not addressing the asserted challenges to the enforceability of the arbitration clause." Ahn assumes that the court did not rule on her challenges based on the fact that the order compelling arbitration does not mention them. But in

---

[6] Because, as we now discuss, Ahn fails to demonstrate that the first judge erred in rejecting her challenges to the arbitration provision's enforceability, we need not consider the Sangers' argument that the second judge's res judicata ruling provides an independent basis for affirming the order compelling arbitration.

7

performing our review, "we presume that a judgment or order of the trial court is correct, ' "[a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." ' " (*People v. Giordano* (2007) 42 Cal.4th 644, 666.) Thus, we generally must "infer the trial court made all factual findings necessary to support the judgment." (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58.)

### a. The arbitration provision was incorporated by the first amendment.

Ahn claims that she was not bound by the arbitration provision because it was not incorporated into the first amendment, the document that she actually signed. The first amendment stated that she agreed to abide by the "Original Agreement," which is defined as "the 'Tenancy in Common Agreement for 847-849-851 LOMBARD STREET' dated August 5th, 2003" (i.e., the TICA), but she claims this identification was insufficient. Rather, relying on *Chan v. Drexel Burnham Lambert, Inc.* (1986) 178 Cal.App.3d 632 (*Chan*), she argues that a secondary document must specifically refer to arbitration, not just the document that contains an arbitration clause, for the arbitration clause to be enforceable against a signer of the secondary document.

" ' "For the terms of another document to be incorporated into the document executed by the parties the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he [or she] must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties." ' " (*Chan, supra,* 178 Cal.App.3d at p. 641, italics omitted.) In *Chan*, the plaintiff stockbroker executed a document under which she " 'agree[d] to abide by the Statute(s), Constitution(s), Rule(s) and By-Laws' " of various

8

organizations, including the New York Stock Exchange (NYSE). (*Id.* at pp. 635–636.) Her employer sought to compel arbitration based on a NYSE rule requiring arbitration of employment disputes. (*Id.* at p. 636.) The Court of Appeal concluded that this language was insufficient to incorporate the NYSE rule at issue: "Arbitration [was] nowhere mentioned" in the executed document and, given that "[t]he rules of an organization may be found in a plethora of sources," the reader "would not even know which body of rules to consult to find the elusive arbitration language." (*Id.* at pp. 643–644.)

Contrary to Ahn's position, *Chan* does not stand for the proposition that a secondary document must specifically mention arbitration to be enforceable against the document's executor. The determinative fact in *Chan* was that the executed document failed to "identify any document or source by title," not that it did not mention arbitration specifically. (*Chan*, *supra*, 178 Cal.App.3d at p. 643; see *Wolschlager v. Fidelity National Title Ins. Co.* (2003) 111 Cal.App.4th 784, 790–791 [discussing *Chan*].) "There is no authority requiring [a] defendant to specify that the incorporated document contains an arbitration clause in order to make the incorporation valid. All that is required is that the incorporation be clear and unequivocal and that the plaintiff can easily locate the incorporated document." (*Wolschlager*, at p. 791.) Here, it was sufficient that the first amendment clearly and specifically referred to the TICA.

Ahn also argues that the TICA was not "readily available" to her as required because she did not receive a copy of it before signing the first amendment. She relies on *Baker v. Osborne Development Corp.* (2008) 159 Cal.App.4th 884, which held there was substantial evidence to support the trial court's determination that a warranty document containing an arbitration clause was not readily available to the plaintiff homebuyers. (*Id.*

9

at pp. 888, 896.)  There, instead of being incorporated into the purchase agreement between the plaintiffs and the defendant builder, the warranty document was incorporated into the builder's warranty application that the plaintiffs were asked to sign "just before the close of escrow."  (*Ibid.*)  The specific facts constituting substantial evidence in other cases "is unhelpful to our analysis" (*City of San Diego v. Boggess* (2013) 216 Cal.App.4th 1494, 1502), and *Baker* does not stand for the proposition that a plaintiff must actually receive an incorporated document before he or she can be bound by it.  Therefore, the trial court did not err by rejecting Ahn's incorporation argument.

> b.  Ahn fails to demonstrate that the trial court erred by rejecting her claim that the arbitration provision was void.

Ahn also claims that the arbitration provision is void because it was "procured by constructive fraud in the execution."  She claims that her real estate agent failed to disclose the provision's existence to her and misled her into believing that the first amendment was "a mere formality," excusing her failure to read the document she signed.  The record does not reveal any error.

We begin by addressing the proper framework for evaluating this claim.  As noted above, we presume that the challenged ruling was correct and the trial court made the required factual findings to support it. (*Fladeboe v. American Isuzu Motors Inc.*, *supra*, 150 Cal.App.4th at p. 48.) Therefore, we cannot agree with Ahn that we are precluded from reviewing the evidence to support the ruling "because the record does not reflect that the trial court engaged in fact-finding."  Rather, we generally review implied findings for substantial evidence.  (*Ibid.*)

Here, however, our review is complicated by the parties' respective burdens of proof. Whereas the Sangers, as the parties seeking arbitration, bore "the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence," Ahn, as the "party opposing the petition[, bore] the burden of proving by a preponderance of the evidence any fact necessary to [her] defense," including the defense of fraud in the execution. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972; *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413 (*Rosenthal*).) Ahn does not dispute that the Sangers met their initial burden of proving that an agreement to arbitrate existed, subject to any defenses she had. Rather, she claims that the trial court should have accepted her defense of fraud in the execution.

When " 'the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment.' " (*Juen v. Alain Pinel Realtors, Inc.* (2019) 32 Cal.App.5th 972, 978.) Rather, " 'the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*Id.* at pp. 978–979.) As we now discuss, the evidence Ahn presented in opposing the petition to compel arbitration fails to meet this standard.

In conducting our review, we will assume that an agreement to arbitrate is void for fraud in the execution when a party to the contract signs it without reading it, based on the representations of a fiduciary—such as a

11

real estate agent—that doing so is unnecessary. (See *Rosenthal*, *supra*, 14 Cal.4th at pp. 415–416; *Assilzadeh v. California Federal Bank* (2000) 82 Cal.App.4th 399, 415.) " 'Generally, it is not reasonable to fail to read a contract; this is true even if the plaintiff relied on the defendant's assertion that it was not necessary to read the contract.' " (*Ashburn v. AIG Financial Advisors, Inc.* (2015) 234 Cal.App.4th 79, 102, italics omitted.) If, however, the parties are in a fiduciary relationship instead of dealing at arm's length, " 'the same degree of diligence is not required of the nonfiduciary party. [Citation.] If the defendant is in a fiduciary relationship with the plaintiff which requires the defendant to explain the terms of a contract between them, the plaintiff's failure to read the contract would be reasonable. [Citations.] In such a situation, the defendant fiduciary's failure to perform its duty would constitute constructive fraud [citation], the plaintiff's failure to read the contract would be justifiable [citation], and constructive fraud in the execution would be established.' " (*Ibid.*) We will also assume that this rule applies even when the fiduciary party is *not* the party attempting to enforce the arbitration agreement against the defrauded party. (See Rest.2d Contracts, § 163, com. (a).)

Given these assumptions, there is no question that Ahn presented evidence which *supported* the conclusion that her agreement to arbitrate was void for fraud in the execution. In a declaration submitted with her opposition to the Sangers' petition to compel arbitration, Ahn stated that: (1) her real estate agent falsely told her that the TICA "was just a set of 'building rules' " and the first amendment was "a mere formality"; (2) she read neither the TICA nor the first amendment before signing the latter document; and (3) she had no knowledge of the arbitration provision in the TICA.

12

This evidence did not, however, *compel* a finding that the arbitration provision was unenforceable against Ahn for fraud in the execution. For one thing, the defense requires a showing of intent to deceive (*Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 349), but on this point Ahn's declaration cursorily asserts only that the real estate agent "misrepresented the nature of [the first amendment] and 'tricked' [her] into signing it." Moreover, even if a party owes a fiduciary duty to another, the scope of that duty "depends on the specific facts of the case." (*Brown v. Wells Fargo Bank, N.A.* (2008) 168 Cal.App.4th 938, 961; see *Carleton v. Tortosa* (1993) 14 Cal.App.4th 745, 754–755 [scope of real estate agent's duty to client is question of fact that "may require testimony by professionals in the field"].) Ahn did not assert facts demonstrating that the real estate agent owed her a fiduciary duty such that she reasonably signed the first amendment without reading it or the TICA.

On a related point, we emphasize that the first amendment is less than a page long and contains the unequivocal statement that "Ahn has read and fully understands all of the terms and conditions of the [TICA] and agree[s] to abide by each and every one of them." In other words, the first amendment is not a byzantine contract in which the key term—the agreement to be bound by the TICA—is hidden. Accordingly, we cannot say as a matter of law that the fiduciary duty the real estate agent owed Ahn excused her from reading the agreement before signing it.

We recognize that our state Supreme Court has said that where "the enforceability of an arbitration clause may depend upon which of two sharply conflicting factual accounts is to be believed, the better course would normally be for the trial court to hear oral testimony and allow the parties the opportunity for cross-examination" before ruling on a petition to compel

13

arbitration. (*Rosenthal*, *supra*, 14 Cal.4th at p. 414.) But the Court has also declined to adopt "the broad rule" that an evidentiary hearing must be held any time "the declarations and documentary evidence present a material factual dispute as to the existence or enforceability of the arbitration agreement." (*Ibid.*) Although the first judge here could have held an evidentiary hearing on defenses to the arbitration provision's enforceability before compelling arbitration, Ahn does not provide any authority suggesting the trial court was *required* to do so—particularly since she did not request one. In sum, she fails to show the court erred by implicitly rejecting her claim of fraud in the execution.

> c. The trial court did not abuse its discretion under section 1281.2 in compelling arbitration.

Finally, Ahn argues that even if she was bound by the arbitration provision, the trial court abused its discretion by compelling the second arbitration because the case was a "mixed-party case"—i.e., a case involving some parties who agreed to arbitration and other parties who did not—and the arbitration risked the possibility of conflicting rulings on common issues of law or fact. (See § 1281.2, subd. (c).) We are not persuaded by the argument.

Under section 1281.2, subdivision (c), a trial court is not required to compel arbitration when "[a] party to the arbitration agreement is also a party to a pending court action . . . with a third party, arising out of the same transaction or series of transactions and there is a possibility of conflicting rulings on a common issue of law or fact." In such a situation, the court has four discretionary options. It "(1) may refuse to enforce the arbitration agreement and may order intervention or joinder of all parties in a single action or special proceeding; (2) may order intervention or joinder as to all or only certain issues; (3) may order arbitration among the parties who have

14

agreed to arbitration and stay the pending court action or special proceeding pending the outcome of the arbitration proceeding; or (4) may stay arbitration pending the outcome of the court action or special proceeding." (§ 1281.2, subd. (d).)

Here, the trial court selected the third option. Ahn argues that this selection constituted an abuse of discretion, but she does little to explain why this was so. She asserts there was a risk of conflicting rulings because "an arbitrator could [have found] that there was no fraud, while a jury could [have found] that there was fraud, and the Sangers were more culpable than [Old Republic]." But without an explanation of the nature of the alleged fraud by the different parties and how rulings on the fraud might clash, we cannot determine whether material conflicting rulings were possible.

In any event, the law does not require a trial court to deny arbitration just because conflicting rulings are possible. While under section 1281.2, subdivision (c), a court *may* deny arbitration when there is a risk of conflicting rulings, section 1281.2 explains that the court "may" nonetheless order arbitration while the litigation is stayed. None of this obligates a court to deny arbitration because of the possibility of conflicting rulings. Those who have agreed to arbitration, as Ahn was found to have done here, do not have a right to avoid it just because others who did not so agree are also parties in the litigation. (*Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 714.)

Our review of the record shows that the trial court gave consideration to whether to compel the second arbitration and whether to stay related proceedings in whole or part. Nothing in the record leads us to conclude that the court's ruling was heedless or fell outside the bounds of reason. (See *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 957.)

15

Therefore, we reject Ahn's argument that the only choice available to the court under section 1281.2, subdivision (d), was her preferred choice of avoiding arbitration.

        C.    *The Arbitrator's Choice of Remedies Was Permissible.*

The Sangers claim that the trial court erred by rejecting the reallocation remedy. We agree, because we conclude that the remedy was rationally related to Ahn's breach of the TICA and did not constitute an impermissible penalty.

        1.    Additional background

The TICA prohibits tenants from incurring any obligation "secured either intentionally or unintentionally by a lien or encumbrance of any kind on the Property without the consent of all Cotenants." The TICA considers the "[c]reation of such a lien or encumbrance" to be an "Actionable Violation," and it provides expansive remedies for such violations. It specifically "lists as options, serially or concurrently, one or more of the following: forced sale, non-judicial foreclosure, . . . eviction, or any other remedy available under California law." Separately, the TICA provides that prevailing parties in proceedings to enforce the agreement are entitled to their "attorney's fees and court or arbitration costs."

As we have mentioned, in its April 2018 interim order, the arbitrator ordered Ahn to remove the lien created by the deed of trust she conveyed to her mother in violation of the TICA. After Ahn failed to comply, the arbitrator first proposed evicting her as an alternative remedy. The proposed remedy would have provided "that the Sangers have the right of [e]viction as provided in the TICA . . ., that after securing eviction they may take possession of Ms. Ahn's unit for the purpose of renting it out, that they may collect the rents but must account for them along with all expenses, and that

16

their right to possession lapses when they have recovered on a net basis all of the money due them in this arbitration, i.e. the total fees and costs awarded, plus any accrued interest. . . . Should Ms. Ahn otherwise pay the amounts due, she will have the right of possession immediately." The arbitrator provided a proposed order to the parties and retained jurisdiction.

The arbitrator's judgment about the appropriate remedy, however, was "frankly . . . altered" when he learned that Ahn's mother had filed a notice of default based on her deed of trust. After noting that his authority under the TICA was "very broad," the arbitrator fashioned the reallocation remedy rather than evicting Ahn. In doing so, he reasoned that the "[t]he notice of default . . . presents the tangible possibility that [Ahn's] ownership interest will be removed without the safeguards for other tenants in common that the TICA imposes when an interest is sold." He found that the lien harmed the Sangers in various ways and that the "prospect of a foreclosure create[d] a further range of damage to the Sangers."

The arbitrator noted that one of the consequences of Ahn's violation of the TICA was that the most direct remedy to address it—a ruling on the validity and enforceability of the lien—was unavailable. If Ahn had complied with the TICA, Ahn's mother (as the lienholder) would have been required to agree to the TICA, including its arbitration provision. But because Ahn did not comply with the TICA, her mother never so agreed and as a result, the "arbitrator [had] no jurisdiction over [Ahn's mother] except in the limited scope to which she [had] agreed, and accordingly [the arbitrator had] no authority to find the lien [to be] invalid or unenforceable."

Given his inability to compel Ahn to remove the deed of trust or to rule on its validity, and given his reluctance to evict Ahn, the arbitrator found it "appropriate to reallocate the mortgage debt" to provide some measure of

17

relief to the Sangers. He explained that this remedy would at least "mitigate one effect of a foreclosure" on the Sangers by giving the fees award priority over other claims under the deed of the trust.[7]

In his final award, the arbitrator declared the Sangers to be the prevailing parties, awarded them a total of $304,894.45 in fees, costs, and arbitration expenses, and ordered that the "obligations on the . . . mortgage as between the Sangers and [Ahn] be reallocated in the amount of . . . $304,894.45, so that the Sangers' portion of the remaining debt on the mortgage is reduced by [this amount] and [Ahn's] portion of the remaining debt on the mortgage is increased by [this amount]."

2.      Analysis

California has a strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 (*Moncharsh*).) Thus, generally speaking, a trial court's confirmation of an arbitration award is subject to limited judicial review. We do not review the validity of the arbitrator's reasoning or the sufficiency of the evidence supporting the award. (*Id.* at p. 11.) "[E]very reasonable intendment must be indulged in favor of the award" (*Lauria v. Soriano* (1960) 180 Cal.App.2d 163, 168), and we may not vacate it even if an error appears on the face of the award and causes substantial injustice. (*Moncharsh*, at pp. 27–28.)

Section 1286.2 lists the exclusive grounds on which a trial court may vacate an arbitration award. Essentially, a court may vacate an award only

---

[7] The arbitrator also found that the remedy would confer a benefit to Ahn by having "the practical effect of reducing [her] exposure to post-judgment interest on the awarded amount, since the reallocation eliminates the obligation to pay elsewise and the interest rate on the mortgage is lower that the post-judgment statutory interest amount."

when "an arbitrator exceeds his [or her] powers [by acting] in a manner not authorized by the contract or by law." (*Jordan v. Department of Motor Vehicles* (2002) 100 Cal.App.4th 431, 443 (*Jordan*).) As relevant here, arbitrators exceed their powers when they fashion a remedy that is not rationally related to the contract and breach or impose economic sanctions to enforce an award. (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 375 (*Advanced Micro Devices*); *Luster v. Collins* (1993) 15 Cal.App.4th 1338, 1350 (*Luster*).)

"In determining whether an arbitrator exceeded his [or her] powers, we review the trial court's decision de novo, but we must give substantial deference to the arbitrator's own assessment of his [or her] contractual authority." (*Jordan*, *supra*, 100 Cal.App.4th at pp. 443–444; see also *Advanced Micro Devices*, *supra*, 9 Cal.4th at p. 376, fn. 9.) We similarly defer to the arbitrator's choice of remedy. (*Ajida Technologies, Inc. v. Roos Instruments, Inc.* (2001) 87 Cal.App.4th 534, 541 (*Ajida*).)

As the trial court recognized, a remedy does not exceed an arbitrator's powers so long as it "bears a rational relationship to the underlying contract as interpreted, expressly or impliedly, by the arbitrator and to the breach of contract found, expressly or impliedly, by the arbitrator." (*Advanced Micro Devices*, *supra*, 9 Cal.4th at p. 367.) " 'The critical question with regard to remedies is not whether the arbitrator has rationally interpreted the parties' agreement, but whether the remedy chosen is rationally drawn from the contract as so interpreted.' " (*Ajida*, *supra*, 87 Cal.App.4th at p. 544.) The remedy need be only "arguably based on the contract; it may be vacated only if the reviewing court is compelled to infer the award was based on an extrinsic source. [Citation.] In close cases the arbitrator's decision must stand." (*Advanced Micro Devices,* at p. 381, italics omitted.)

19

a.     The reallocation remedy is rationally related to Ahn's breach of the TICA.

In rejecting the reallocation remedy, the trial court found that although the remedy was rationally related to the contract (the TICA), it was not so related to the breach (Ahn's wrongful conveyance of the deed of trust). According to the court, such a relationship could exist only if the Sangers suffered actual monetary harm. With this premise, the court elaborated that while "monetary harm [was] theoretically possible," it was speculative because the arbitrator failed to "engage in any analysis of any of the relevant factors to determine whether the Sangers actually suffered any monetary harm."[8]  The court concluded that the reallocation remedy's "conversion of unsecured debt consisting largely of fees and costs incurred by the Sangers for claims other than their claim that Ms. Ahn breached the TICA to secure[] debt is nothing more than giving the Sangers a judgment collection advantage not afforded to them under California's real property or enforcement of judgment laws."

We disagree with the trial court's dual premises that the Sangers suffered no actual monetary harm and that such harm was required to establish a rational relationship between the reallocation remedy and the breach.  In our view, the record demonstrates that the Sangers suffered both actual and potential monetary harm, as well as non-pecuniary harm, and these collective injuries sufficiently justified the reallocation remedy.

_____

[8] The factors that the trial court found the arbitrator failed to consider were:  "1) [the] value of the tenancy in common property or of any . . . of the co-tenancy interests; 2) the equity in the tenancy in common property or of any of the co-tenancy interests; 3) the encumbrances on the tenancy in common property or on any of the three co-tenancy interests other than the [joint] mortgage and [Ahn's mother's] lien; and/or 4) the effect of bankruptcy court rulings on [Ahn's mother's] lien or on any of the co-tenancy interests."

To begin with, Ahn's conveyance of the deed of trust *did* cause actual monetary harm to the Sangers because it required them to expend attorney's fees and costs to have the conveyance declared a violation of the TICA. While not all of the Sangers' fees and costs were incurred to prove Ahn's violation, some of them incontrovertibly were. In addition, as the arbitrator observed,

> "[T]he lien has a number of consequences in terms of recoverability of the monetary portion of the award in this case, the possibility that a non-signatory to the TICA will take ownership of [Ahn's] interest in the TIC, and an array of legal issues that would not have arisen in the absence of the lien. At minimum there looms a dispute about the validity and priority of the lien about which the parties have ongoing litigation, and if [Ahn] and [her mother] are successful in those disputes, the lien will have priority over later-arising claims such as the Sangers['] in this case. Moreover, the prospect of a foreclosure creates a further range of damage to the Sangers."

Thus, the lien's conveyance required the Sangers to expend money, wrongly clouded the property's title, created a cascading set of potential legal problems, and potentially insulated Ahn's interest in the property as an asset from which the Sangers could satisfy their fees award. The arbitrator found "that within the limited range of remedies presented and available to [him], reallocation is the most suitable to the breach found in the circumstances presented. While it may only address one part of the harm should [Ahn's mother's] lien be foreclosed upon, it does rectify the priority issues concerning the award of fees and costs created by the lien." In our view, Ahn's breach justified the reallocation remedy's purpose of mitigating the possibility that her property interest would be shielded as an asset available to the Sangers.

We might be more hesitant to find a rational relationship between the remedy and the breach if the remedy attempted to mitigate an effort by Ahn to insulate her assets from the Sangers that was unrelated to the TICA. But

Ahn's conveyance of the deed of trust was *itself* the breach of the TICA, and we therefore cannot conclude that the reallocation remedy's goal of mitigating one possible harmful consequence was not rationally related to the breach. As a result, we must defer to the arbitrator's decision to choose this remedy. (*Ajida*, *supra*, 87 Cal.App.4th at p. 541.)

In rejecting the reallocation remedy, the trial court found that the "sole non-monetary harm identified by the Arbitrator is the 'possibility that a non-signatory to the TICA will take ownership of Ms. Ahn's interest in the TIC.' " This harm, according to the court, failed to establish a rational basis for the reallocation remedy because "reallocation of the mortgage debt does not in any way remediate the possibility that a non-signatory to the TICA will take ownership of Ms. Ahn's co-tenancy interest and, if anything, makes that possibility more, not less, likely." Not only do we disagree that the only non-monetary harm to the Sangers was the possibility of a non-signatory taking over Ahn's property interest, but we also agree with the arbitrator that the reallocation remedy was not unrelated to the breach just because it failed to remediate every aspect of the Sangers' harm.

Equitable principles also support the arbitrator's award. *Moncharsh* made clear that arbitrators, "unless specifically required to act in conformity with rules of law, may base their decision upon broad principles of justice and equity, and in doing so may expressly or impliedly reject a claim that a party might successfully have asserted in a judicial action." (*Moncharsh*, *supra*, 3 Cal.4th at pp. 10–11.) Here, the arbitrator resorted to the reallocation remedy only after Ahn failed to comply with his original order that she remove the lien. And according to the arbitrator, Ahn's violation of the TICA deprived him of jurisdiction over Ahn's mother and left him unable to order her to remove the lien. Having negated the viability of the most direct and

comprehensive remedy to address the breach, Ahn is hardly in a position to complain about the arbitrator's less-direct and less-comprehensive alternative remedy.

> b. The reallocation remedy is not an impermissible penalty.

In rejecting the reallocation remedy, the trial court also found that it was an impermissible enforcement of the fees award. We conclude otherwise.

Arbitrators lack the power to impose penalties against a party for not complying with their orders. (*Luster, supra*, 15 Cal.App.4th at p. 1347.) In *Luster*, two neighbors arbitrated a dispute over an easement. (*Id.* at p. 1342.) One of the neighbors planted trees in the easement, and the arbitrator ordered them removed. After the tree planter refused to comply with the order, the arbitrator ordered him to pay $50 per day per tree for each day he continued to fail to comply. (*Id.* at pp. 1343, 1348.) The Court of Appeal concluded that the arbitrator lacked the authority to impose the $50 per day penalty. It reasoned that "the arbitrator's responsibility was to determine whether [the tree planter] had wrongfully placed trees on the easement and, if so, how those wrongful acts could be rectified. Consistent with his responsibility the arbitrator found [that the tree planter] improperly burdened [his neighbor's] use of the easement and ordered removal of specific trees. This should have been the extent of his decision unless he was statutorily empowered or the parties agreed he could include self-executing provisions to insure its enforcement as part of the award." (*Id.* at p. 1348.) "[N]othing in section 1280 et [sequitur] . . . authorizes an arbitrator to include economic sanctions, such as those imposed here, as part of the award." (*Ibid.*) The court further observed that the Legislature had enacted an entire statutory scheme, the Enforcement of Judgments Law, and thus "had no need to furnish an arbitrator additional authority for enforcement purposes

23

postjudgment." (*Id.* at p. 1349.)

The circumstances here are unlike those in *Luster*. They might have been similar if the arbitrator had imposed a penalty on Ahn for not removing the lien as originally ordered, but he did no such thing. Instead, he fashioned the reallocation remedy to "mitigate one aspect of a [possible] foreclosure" initiated by Ahn's mother. True enough, the arbitrator could have let the fees award stand on its own as the only relief granted. That award could have then been confirmed by a court and subsequently enforced under the statues allowing for the enforcement of judgments.[9] But just because the arbitrator could have limited his award to the fees award does not mean he was required to do so.

The trial court found it meaningful that much of the fees award involved fees and costs for parts of the arbitration dispute that were unrelated to the Sangers' claim that Ahn violated the TICA. The court found fault with the arbitrator's remedy, which " 'in effect put the reallocated amount as a debt of [Ahn] with priority over [Ahn's mother's] lien,' " because it gave "a judgment collection advantage not afforded to [the Sangers] under California's real property or enforcement of judgment laws." But an arbitrator's remedy is not disallowed under *Luster* just because it enhances the recoverability of another aspect of the arbitrator's award. The TICA conferred broad authority on the arbitrator, and Ahn has not pointed to any of its provisions that barred him from adopting the reallocation remedy. (See *Paramount Unified School Dist. v. Teachers Assn. of Paramount* (1994)

---

[9] Once a judgment confirms an arbitration award, the judgment "has the same force and effect as, and is subject to all the provisions of law relating to, a judgment in a civil action . . .; and it may be enforced like any other judgment of the court in which it is entered." (§ 1287.4.)

24

26 Cal.App.4th 1371, 1385 [deferring to arbitrator's decision because nothing in the agreement prohibited it].)

The trial court also believed that the reallocation remedy was an improper enforcement measure because the arbitrator stated that the fees award " 'will be considered paid upon the reallocation of the mortgage debt.' " (Emphasis omitted.) We interpret this comment as a ruling by the arbitrator that the fees award would be satisfied by the reallocation of the mortgage regardless of whether or when the Sangers realized an actual monetary recovery. The Sangers, not Ahn, were potentially aggrieved by this aspect of the ruling, but they do not challenge it on appeal and we therefore have no cause to review it.

III.
DISPOSITION

The March 5, 2019 order is reversed, and the matter is remanded with directions to enter an order confirming the arbitrator's final award without correction. The Sangers shall recover their costs on appeal.

_____

Humes, P.J.


WE CONCUR:



_____

Margulies, J.



_____

Sanchez, J.


*Sanger et al. v. Ahn*  A157260/A157935

26